HARRY P. MILES *v.* DANIEL J. LAYTON, Chief Justice of the State of Delaware, and WILLIAM WATSON HARRINGTON, Associate Judge of the State of Delaware, constituting the Superior Court of the State of Delaware, in and for Sussex County.

(*January* 21, 1937.)

WOLCOTT, Chancellor, RICHARDS, RODNEY and SPEAK-MAN, J. J., sitting.

*William S. Potter* (of Ward and Gray) for Petitioner.

*Tunnell and Tunnell* for Respondents.

Supreme Court, January Term, 1937.

RODNEY, J., delivering the opinion of the Court:

It seems to be hardly questionable that when a matter properly removable to a Federal Court is in fact so removed, then further proceedings in such matter should await the action in the Federal Court.

■ The mere fact of removal, however, neither deprives nor excuses a State Court from the duty of determining the legal propriety of the removal, as shown by the petition, and as distinguished from factual considerations outside of the petition. *Stone v. South Carolina,* 117 *U. S.* 430, 6 *S. Ct.* 799, 29 *L. Ed.* 962.

Since the Judges then constituting the Superior Court for Sussex County have indicated that in their opinion the matter before them, in the form and condition it then was, was not a proper case for removal, and since their action, or proposed action, is sought to be restrained by a Writ of Prohibition from this Court, so it becomes material for this Court to consider the nature of. the judgment and the subsequent steps taken in connection with it. This case is not primarily concerned with principles of the *Law of Prohibition* nor, except incidentally, with those of Removability of Causes.

It may be assumed, for the present discussion, that where a controversy concerns citizens of different States and involves a jurisdictional amount, such suit or controversy may be removable by the defendant to the Federal Court, if such suit or controversy was within the original jurisdiction of the District Court of the United States.

[3] It may also be conceded, for the purposes of this case, that the removability of subsequent proceedings on these judgments depends upon the character and effect of such subsequent proceedings. If such subsequent proceedings are merely supplementary or auxiliary to the former proceedings, then the subsequent action does not become removable; if, however, the subsequent proceedings become a separate and distinct proceeding, or tantamount to a bill in equity whereby the former plaintiff becomes a new defendant, then such subsequent proceedings may become removable. This was substantially the holding of *Barrow*

v. *Hunton,* 99 *U. S.* 80, 25 *L. Ed.* 407, and *Simon v. So. Ry. Co.,* 236 *U. S.* 115, 35 *S. Ct.* 255, 59 *L. Ed.* 492.

We are thus immediately confronted with the original judgments and the nature of the subsequent proceedings. We see that Miles, a resident of Maryland, came into Delaware, selected his own forum, inaugurated proceedings against two residents of Delaware, and there, at the April Term, 1936, entered three several obligations upon Warrants of Attorney, and thus became plaintiff in three several judgments. The petitions to open the judgments were presented at the next ensuing or June Term, 1936. So first we must inquire if the application to open the judgments was in time.

██ Now it is a general rule of the widest acceptation that the power or control of Courts over their judgments does not extend beyond the term of Court at which they were rendered, unless proceedings to affect such judgments were taken during the term. This rule, however, like many general rules, is most misleading because of its generality. To the rule itself there are many exceptions, some of which are statutory. Of course, one chief principle back of the rule is that where a Court has taken jurisdiction of a matter, heard and determined it, and rendered judgment thereon, public policy demands a finality to the proceedings in the term of court where the final judgment was rendered. This reasoning does not apply to a judgment entered by confession on a Warrant of Attorney, and such judgments constitute exceptions to the general rule, although in most respects such judgments resemble other judgments. *Wyman v. Yeomans,* 84 *Ill.* 403.

In a judgment by confession on Warrant of Attorney there is, of course, an appearance for the defendant. This is true as a matter of form and yet, as a fact, that appearance for the defendant was procured by the plaintiff himself

and for his own advantage, and, usually, without the actual knowledge of the defendant. That is one reason that such judgments are distinguished from other judgments and even from those judgments by confession in adversary suits where the defendant is in court after due service of process. *Banning v. Taylor,* 24 *Pa.* 289, 293.

In a judgment obtained on an alleged or purported Warrant of Attorney the defendant is not served with any process, nor does the Court actually know of the rendition of any judgment. The entry of the judgment is a formal matter transacted in the office of the Prothonotary, and not in the presence of the Court. No rising of a Court at the end of the term should give definite finality to a judgment entered on a Warrant of Attorney, perhaps but a few minutes before such adjournment, where neither the defendant nor the Court itself knew of the existence of such judgment. The holding that a Court in Delaware does not lose control over a judgment entered upon Warrant of Attorney, by the adjournment or ending of a term, is strengthened by the fact that upon the adjournment of a term and during the ensuing recess or vacation, judgments on Warrants of Attorney are still entered as of the term just passed, and this continues until the actual opening of the Court at the next term. The three judgments entered in the present case, on May 29, 1936, although appearing as judgments of the April Term, were entered after that term had adjourned.

The court in *Tweed v. Lockton,* 5 *W. W. Harr.* (35 *Del.*) 474, 167 *A.* 703, was not concerned with a judgment entered on Warrant of Attorney, and, therefore, did not discuss any principles affecting such a judgment. Since the judgments before us were entered upon Warrants of Attorney, our discussion will be confined to judgments of that character.

In *King v. Brooks,* 72 *Pa.* 363, Judge Sharswood in speaking of the power of a Court to open judgments, says:

"In the case of judgments by confession or default there is no limit of time to the exercise of this power, but in the case of judgments entered adversely after a hearing or trial it is settled that it must be done before the end of the term at which they are entered."

In this case we are only considering judgments by confession on Warrants of Attorney. Judgments by default, in Delaware, have always been opened regardless of the term. The Statute (*Rev. Code* 1915, § 4089) requires the Judges to open judgments by default where the defendant had not been served with process or had no knowledge of the suit prior to judgment, if such application was made at or before the next term after judgment. In *Brown v. P., W. & B. R. R.* (*C. C.* 1881), 9 *F.* 183, it was held that this Statute did not affect the ancient practice of opening judgments by default if the application was made without unreasonable delay. In the cited case there was filed a certificate of all the Law Judges of Delaware stating that, within the sound discretion of the Court, the ancient practice had always been to open judgments by default if the application was made without unreasonable delay.

Judgments entered by confession upon Warrants of Attorney are in the nature of summary proceedings and remedial action as to them will not be unduly limited. Such judgments are prohibited in some jurisdictions, and over a century ago Kirkpatrick, Chief Justice of New Jersey, said:

"I think that these judgments entered upon bonds and warrants of attorney should, upon proper application, be very readily and widely opened, for the method in which they are entered is the loosest way of binding a man's property that ever was devised in any civilized country." *Diament v. Alderman,* 7 *N. J. Law* 197, 198.

As Chancellor Kent said in *Brinkerhoff v. Marvin,* 5 *Johns. Ch.* (*N. Y.*) 320,

"It is settled, as an established rule, that Courts of law have an equitable jurisdiction over judgments by confession entered upon warrants of attorney * * * and it is necessary to justice, that Courts of law should possess, and liberally exercise that jurisdiction." See, also, *Lake v. Cook*, 15 *Ill.* 353.

We hold that the petitions to open the judgments were in time.

We now propose to give some consideration to the distinction between motions to vacate a judgment on the one hand and, on the other, motions to open a judgment to let a defendant into a defense or to ascertain the amount due on the judgment, or for some other limited purpose. Concerning this distinction there has been a looseness of both thought and expression from which our own Courts have not been entirely immune. Our reports contain cases where the desired action on the judgment was expressed as "to vacate," "to strike off," "to set aside," as well as "to open," and the action was taken as well for defects apparent upon the record as for defects not so appearing. Where a fatal defect appears upon the record of a judgment, then a petition for a rule to show cause why the judgment should not be vacated is the proper remedy. The judgment being a judgment of the Court, then it alone could vacate it, and if it affirmatively appeared upon the record that the judgment is fatally defective, then, of course, it would be the duty of the Court to vacate the judgment.

Where, however, the suggested defect or defense is not apparent from the record, but must appear by evidence "aliunde," then the parties may, if the circumstances warrant it, be granted an issue to try the question of fact before a jury. In order that this issue may be framed and tried, it is necessary that the judgment which had appeared as a final judgment should be so far opened as to admit the desired action, whether it be to allow the defendant into a trial, or to ascertain the amount due on the judgment. The preliminary motion,

therefore, to affect a judgment valid and perfect on its face, should be a motion to open such judgment to the limited extent as shown by the petition.

The foregoing has been a uniform practice in Pennsylvania, as established by a multitude of cases. From this great number of cases a few, only, need be cited. *O'Hara v. Baum,* 82 *Pa.* 416, 420; *Adams v. Grey,* 154 *Pa.* 258, 26 *A.* 423; *Wilson v. Vincent,* 300 *Pa.* 321, 150 *A.* 642; *Dikeman v. Butterfield,* 135 *Pa.* 236, 19 *A.* 938; *Philadelphia v. Jenkins,* 162 *Pa.* 451, 29 *A.* 794; *France v. Ruddiman,* 126 *Pa.* 257, 17 *A.* 611; *King v. Brooks,* 72 *Pa.* 363.

The principle of the Pennsylvania cases has substantially been followed in Delaware, although the cases here show no harmony of expression. It is not surprising to find a similarity of practice in the two jurisdictions of Pennsylvania and Delaware. Originally united by an *Act of Union* they enjoyed the same laws. After the separation of the two Colonies, and until the Revolution, they had the same Governor and a great similarity of legislation, and to a much later date the lawyers of both Colonies practiced indiscriminately in the Courts of each.

 The classification of the Delaware cases is not easy because the distinction between the nature of the applications affecting judgments has not always been kept in mind. See *Taylor v. Rossiter,* 6 *Houst.* 485. In *Woolley's Delaware Practice,* § 847, it is said that a rule to vacate a judgment differs from a rule to open a judgment "in that if the reasons or facts supporting the motion for a rule to vacate are established the judgment is destroyed, while in the other rule the opening of the judgment does not destroy the institution of the suit, and in a case where the judgment is held cautionary it does not affect the lien of the judgment or of execution upon it."

This is, of course, correct, but in a motion to vacate

a judgment the judgment itself is not affected or destroyed until the rule is made absolute, and in case of a motion to open the judgment where an issue is to be framed for submission to a jury, then not until after the jury has rendered its verdict. But in the meantime, in the latter case, something has happened to the judgment. It has been opened for a limited purpose.

Some of the Delaware cases concerning applications to affect judgments may be briefly considered and classified. We shall consider only those cases where the application to open or vacate the judgments was addressed to or arose from the equitable or inherent jurisdiction of the Court, and not by virtue of any statute, but the cases considered under this branch of the case are not exclusively those entered upon Warrant of Attorney. The cases fall into three general groups.

1. Applications to open judgments to ascertain the amount due.

*Garden v. Derrickson,* 3 *Houst.* 342; *Derrickson v. Derrickson,* 2 *Marv.* 281, 43 *A.* 170; *Lofland v. McDaniel,* 1 *Penn.* 416, 41 *A.* 882; *In re Morace & Gileno,* 1 *Boyce* 67, 74 *A.* 375.

2. Applications to open judgments to allow the defendant to interpose a defense.

*Whitaker v. Parker,* 2 *Harr.* 413; *Hickman v. Hickman,* 3 *Harr.* 511; *Green v. Maloney,* 7 *Houst.* 22, 30 *A.* 672.

3. Applications to vacate judgments.

*Mayor of Wilmington v. Kearns,* 1 *Houst.* 362; *Odessa Loan Ass'n v. Dyer,* 2 *Boyce* 457, 81 *A.* 469; *Jones v. Hinderer,* 7 *Boyce* 516, 108 *A.* 737; *Mendenhall's Ex'rs v. Springer,* 3 *Harr.* 87; *Bank of Wilmington & Brandywine v. Sharpe,* 5 *Harr.* 170; *Seal v. Seal,* 1 *Houst.* 516; *Vincent*

*v. Herbert,* 2 *Houst.* 425; *Roman Automobile Co. v. Miller,* 5 *Boyce* 586, 95 *A.* 654; *Waples v. Hastings,* 3 *Harr.* 403; *Hukill v. Fennemore,* 4 *Houst.* 581; *Hickman v. Branson,* 1 *Houst.* 429; *Barnett v. Lynch,* 1 *Marv.* 114, 40 *A.* 666; *Guyer's Adm'r v. Guyer,* 6 *Houst.* 430.

It is quite evident in this last class that when the Court itself vacated the judgment the infirmity of the judgment either appeared from the record itself, was apparent by inspection, or that there was involved merely a legal principle and no question of fact.

Of the cases last cited *Mayor of Wilmington v. Kearns, Odessa Loan Ass'n v. Dyer* and *Jones v. Hinderer* were cases where the record itself either showed no proper service on the defendant or no jurisdiction in the Court.

In *Mendenhall's Ex'rs v. Springer, Bank of Wilmington & Brandywine v. Sharpe, Seal v. Seal, Vincent v. Herbert* and *Roman Automobile Co. v. Miller* there was no proper warrant of attorney authorizing the confession of judgment, and this could be seen by inspection.

In *Waples v. Hastings, Hukill v. Fennemore, Hickman v. Branson, Barnett v. Lynch* and *Guyer's Adm'r v. Guyer* there seems to have been no serious dispute as to the question of fact so the whole question was one of law.

On the other hand, where the vacation of the judgment involved a question of fact, the Courts have frequently framed issues and had the question of fact determined by a jury. See *State, Use of Duncan, v. Richardson,* 1 *Marv.* 372, 373, 41 *A.* 75; *In re Vandenburg,* 1 *W. W. Harr.* (31 *Del.*) 192, 112 *A.* 830. It is true that in *Karcher v. Green,* 8 *Houst.* 163, 32 *A.* 225, the Court appears to have heard testimony as to the fact of infancy, but it is possible that this was by stipulation of the parties, as was done in *City Loan System v. Nordquist,* 5 *W. W. Harr.* (35 *Del.*) 371, 165 *A.*

341, or on agreed facts as in *Hendrix v. Kelley,* 4 *W. W. Harr.* (34 *Del.*) 120, 143 *A.* 460, or that the Court determined not to submit the question to a jury.

There is one case, *Green v. Maloney,* 7 *Houst.* 22, 30 *A.* 672, which bears a marked similarity to the present case, and in which there was followed what this Court thinks was the proper practice. The report of the case does not show the details of this practice, but these appear from the docket entries of the case itself.

In that case the judgment was entered upon a Warrant of Attorney, which judgment was valid upon its face. Seeking to attack that judgment on the ground that the obligation and Warrant of Attorney had not been executed by the defendant, or was not binding on him, a motion was made for a rule to show cause why the judgment should not be opened and the defendant let into trial. On the return of this rule there was a hearing by the Court, after which the rule was evidently made absolute, as the Court ordered an issue to be framed to be tried by a jury at the Bar of the Court.

When a judgment is sought to be vitiated for a defect apparent upon its face, the proper course is a rule to show cause why the judgment should not be vacated. Upon the return of the rule the Court inspects the record and determines the application by either making the rule absolute and vacating the judgment, or by discharging the rule and leaving the judgment intact.

Where the infirmity of the judgment is not apparent upon the face of the record but exists in the nature of a pretermitted defense, to be shown by evidence, the application should be for a rule to show cause why the judgment should not be opened and the defendant let into a trial or obtain some other specified remedy.

On the return of this Rule and after the plaintiff's answer to the defendant's petition a hearing is had by the Court and if no sufficient grounds are shown for the opening of the judgment the Rule is discharged. If, on the other hand, proper *prima facie* grounds for the opening of the judgment are shown at the hearing, the Rule to open the judgment is made absolute and an issue may be framed to try the questions of fact. This issue is a proceeding in the same cause and is not a collateral proceeding. The issue has often been called a "feigned issue" which only means an issue at the instance of the Court or of the parties to determine a matter of fact which the Court has either not the power or is unwilling to decide. The issue proceeds not from the right of the parties to have the matter determined by a jury, but rather from the fact that in the Rule to open the judgment the Court is exercising its inherent equitable powers and may prefer the question of fact to be determined by a jury.

*Gurney v. Langlands,* 5 *B. & Ald.* 330 (106 *Eng. Rep.* 1212) ; *Banning v. Taylor,* 24 *Pa.* 289, 291; *Morey v. Shearer,* 2 *Cow.* (*N. Y.*) 465; *Frasier v. Frasier,* 9 *Johns.* (*N. Y.*) 80; *McKinstry v. Thurston,* 12 *Wend.* (*N. Y.*) 222.

In the citation and discussion of the Delaware cases covering the vacating or opening of judgments we have confined our consideration to the method and form of the application and have, in no manner, concerned ourselves with the grounds or reasons on which an application may be made.

This power to vacate or to open judgments, if not expressly recognized by the Common Law, has, at least existed as an equitable and inherent power in the Court for many years. Chief Justice Tilghman of Pennsylvania, in *Kellogg v. Krauser* (1826), 140 *Serg. & R.* 137, 143, 16 *Am. Dec.* 480, said that he had known the power to be unques-

tioned for upwards of fifty years, which reached back to Colonial days, when the similarity of practice in Pennsylvania and Delaware was very marked.

General principles concerning the attack on judgments are generally recognized though procedure varies somewhat in different jurisdictions. *Gurney v. Langlands,* 5 *B. & Ald.* 330 (106 *Eng. Rep.* 1212), was a case where a judgment had been entered on a Warrant of Attorney. A feigned issue was framed to determine the claim that the instrument had been forged. Chief Justice Gibson of Pennsylvania, however, in *Gallup v. Reynolds,* 8 *Watts* 424, points out the difference between the English and Pennsylvania and Delaware practices. In England, as he points out, the proceeding was a collateral proceeding, while in Pennsylvania it was a supplementary proceeding in the cause itself. In New Jersey allegations of fraud in the obtaining of the obligation are, or were determinable in an issue framed on an application to open a judgment (*Barrow v. Bispham,* 11 *N. J. Law* 110), while in Delaware the Law Courts have preferred that questions of fraud should be determined in the more comprehensive jurisdiction of a Court of Equity (*State, Use of Duncan, v. Richardson,* 1 *Marv.* 372, 41 *A.* 75) ; *Townsend v. Townsend,* 5 *Harr.* 20.

██ ██ If then, as we hold, the proper petition in the present case is to open the judgment and let the defendant into a trial, and if an appropriate procedure is a feigned issue to allow a jury to determine the validity of the signature to the obligation and Warrant of Attorney, then such proceedings must be auxiliary and supplementary to the judgment itself. By the proceedings and until the verdict of the jury, the judgment as a judgment still remains, and the executions issued thereon still remain. The petition and the subsequent proceedings attack the jurisdiction of the Court where the judgment was entered, for without a valid Warrant of Attorney there was, of course, no juris-

diction to enter a valid judgment and no jurisdiction over the defendant was ever acquired by the Court.

The situation is as if Miles, the plaintiff in the judgments, had brought suit and the defendant then desired, by the issue, to interpose his defense. The judgments, heretofore existent, are not destroyed but merely opened and held cautionary awaiting the disposition of the issue.

The case of *Goodrich v. Hunton,* 29 *La. Ann.* 372, presents an excellent discussion of the removability of causes and of supplementary proceedings auxiliary to a judgment. This case was not reversed by *Barrow v. Hunton,* 99 *U. S.* 80, 25 *L. Ed.* 407, as both reached the same conclusion. In harmony with both decisions we think that the proceedings in the present case are not new or independent proceedings, but supplementary to the existing judgments, do not fall within any jurisdiction of the Federal Court, and are, therefore, not removable.

 From an entirely different viewpoint, the lack of removability of the cause is apparent. Of course, no cause at law may be removed to the law side of the Federal Court unless the cause of action was one of which the Federal Court on its law side could have original jurisdiction. The reason is that a cause could not be removable unless the Federal Court has jurisdiction to hear the controversy and to grant relief. It has been determined in a number of cases that the jurisdiction of Federal Courts is not enlarged by State legislation. *Mississippi Mills v. Cohn,* 150 *U. S.* 202, 14 *S. Ct.* 75, 37 *L. Ed.* 1052. So it has been held that a State statute authorizing a defendant in an action at law to obtain affirmative equitable relief could not be followed by the Federal Court after removal, and if such statutory relief is beyond the power of the Federal Court the case will be remanded. *Sturges v. Portis Mining Co.* (*D. C.*), 206 *F.* 534; *City of Knoxville v. Southern Paving Const. Co.* (*D. C.*), 220 *F.* 236.

 In the present case the relief that could be granted by the Superior Court of Sussex County in an application to open the judgments, is in the nature of equitable relief which, while not originating in a statute, is an equitable attribute to the jurisdiction of the Court in which the judgments were entered, and is exercisable solely by that Court. If the jurisdiction of the Federal Court could not be enlarged by a State statute, supplementing the equitable jurisdiction, it would seem clear that it could not be enlarged by the equitable power inherent in the State Court, solely because it was the Court in which the judgment was entered, or by a State practice affecting a State Court alone.

The law side of the Federal Court would be powerless to grant any relief concerning the judgments in question, and we assume it is to the law side of the Federal Court that a suit at law in a State Court must be removed.

 The judgments already entered in the Superior Court for Sussex County will remain there upon the Docket until vacated or modified by some Court having proper jurisdiction. If the right of removal exists then jurisdiction of the State Courts as to the validity of these judgments is at an end. If the Federal Courts should conclude that the judgment should be vacated, how could that be affected? The State Court could not be reclothed with jurisdiction and instructed to enter the order of vacation of the judgment, nor could the Federal Court itself enter such an order. The judgments do not become judgments of the Federal Court so that process could issue on them if they are not vacated. *Davis v. Harris* (*C. C.*), 124 *F.* 713.

 The present matter could not, we think, be removed from a State Law Court to the equity side of the Federal Court. The distinction between the legal and equitable jurisdiction of the Federal Court has been scrupulously maintained. *Donovan v. Wells Fargo & Co.* (*C. C. A.*), 169 *F.* 363, 22 *L. R. A.* (*N. S.*) 1250. Counsel seeking the

removal contend that the petition to open the judgment is "tantamount to a Bill in Equity." Being reluctant to claim the ability to precisely define such a term, we repeat that there is in this case no Bill in Equity and we may not so consider the proceedings. The petition to open the judgment is a legal remedy in a Law Court, and an adequate legal remedy which goes to the very existence of the judgment itself.

The Federal Courts are expressly prohibited from injunctive action which would directly affect a judgment in a State Court although, concededly, they may, in a proper case, enter such a decree as will, between the parties, have a practical effect of vacating judgments. *Simon v. So. Ry.*, 236 *U. S.* 115, 128, 35 *S. Ct.* 255, 59 *L. Ed.* 492. But injunctive relief, acting in *personam,* is not the relief sought by the defendant in the judgment. She seeks both to deny the existence of the judgments, have them entirely voided upon the record, and have dissolved the attachments which have been issued on those judgments. We think none of this can be done in the Federal Court, and it would be a travesty on justice if her right to have these matters determined could be prevented, and if she should be compelled to accept relief of a nature entirely different from that sought by her, and all this by means of a removal to the Federal Court at the instance of that party who had originally commenced the proceedings in the State Court, and against whom she desires the remedial action.

Because we think the Federal Court could not have jurisdiction of the petition to open the judgments, and that the defendant should not be put to the delay and expense of a removal and a remand, so we think that the Superior Court of Delaware has not lost jurisdiction of the petition originally presented to it.

The petition for the Writ of Prohibition is denied.