EL PUEBLO DE PUERTO RICO, querellante, *v.* SOUTH PORTO RICO SUGAR COMPANY (corporación de New Jersey), SOUTH PORTO RICO SUGAR COMPANY (corporación doméstica) y RUSSELL & COMPANY, SUCESORES, demandadas.

Núm. 4.—*Sometido:* Enero 14, 1939. *Resuelto:* Enero 24, 1939.

*James R. Beverley* y *R. Castro Fernández,* abogados de la South P. R. Sugar Co. (corporación doméstica); *Ryder Patten,* abogado de la South P. R. Sugar Co. (corporación de New Jersey); *Hartzell, Kelly & Hartzell,* abogados de Russell & Company, Sucesores; *Hon. Procurador General B. Fernández García,* y *Miguel Guerra-Mondragón, Rafael Rivera Zayas* y *Luis Venegas Cortés,* abogados asociados los tres últimos, abogados del querellante.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Autorizado el Procurador General para presentar a nombre de El Pueblo de Puerto Rico una información de la naturaleza de *quo warranto,* la radicó el 7 de noviembre del año pasado y se concedió a las demandadas arriba nombradas hasta el día 22 de diciembre de 1938 para formular sus alegaciones.

Antes de vencer el plazo, el 20 del mes pasado, comparecieron las demandadas, sin someterse a la jurisdicción de este tribunal, con el solo objeto de solicitar el traslado del caso a la Corte de Distrito de los Estados Unidos para Puerto Rico. A la petición de traslado acompañaron la fianza que para tales casos exige la ley. Basan su petición las demandadas en el artículo 28 del Código Judicial de los Estados Unidos, que en lo pertinente dice así:

"Cualquier pleito *de naturaleza civil,* en ley o en equidad, *en que esté envuelta la interpretación, validez o efecto de la Constitución o leyes de los Estados Unidos,* o tratados celebrados o que puedan celebrarse bajo su autoridad y sobre los cuales se concede jurisdicción original a la Corte de Distrito de los Estados Unidos, presentado en una corte estatal, puede ser trasladado a petición de los demandados a la Corte de Distrito de los Estados Unidos correspondiente. . ."

Se señaló el día 10 del actual para oír a las partes sobre la procedencia del traslado y luego de informar oralmente en apoyo de sus respectivas posiciones, se les concedió plazo para radicar alegatos, quedando definitivamente sometida la cuestión al radicar el suyo el Procurador General el 14 del mes en curso.

Para que proceda un traslado de una corte estatal o insular a una Corte de Distrito de los Estados Unidos, es preciso que concurran las siguientes circunstancias:

(*a*) Que se trate de un pleito de naturaleza civil en ley o en equidad;

(*b*) Que envuelva una cuestión federal, es decir, que surja de la interpretación de la Constitución o leyes de los Estados Unidos, o tratados celebrados o que pudieran celebrarse bajo su autoridad;

(*c*) Que se haya concedido jurisdicción original sobre dichos pleitos a las Cortes de Distrito de los Estados Unidos; y

(*d*) Que la cuantía envuelta exceda de $3,000.

Si faltare cualquiera de estos cuatro requisitos no procederá el traslado y la corte estatal o insular, según fuere el caso, retendrá su jurisdicción.

Sostienen las demandadas que la misión de este tribunal en el presente caso debe limitarse a examinar la petición de traslado y la fianza que la acompaña, y si ni una ni otra son defectuosas, es imperativo decretar el traslado sin ulterior consideración.

No podemos convenir con la proposición de las demandadas.

"El derecho al traslado depende de lo que resulte de la faz de las alegaciones existentes en la fecha en que se radique la petición de traslado. Los elementos de la jurisdicción federal deben surgir de la faz de la demanda o petición del demandante; si no es así, el traslado debe denegarse, sin que las alegaciones de la petición de traslado u otras subsiguientes puedan completar los hechos que confieren jurisdicción para decretarlo." Montgomery's Manual of Federal Jurisdiction and Procedure, 3a. ed., sección 284 y casos citados; *Salem Trust Co.* v. *Manufacturers' Finance Co.*, 264 U. S. 182; *Gully* v. *First National Bank*, 299 U. S. 109.

Es lógico que el derecho al traslado no dependa de la voluntad exclusiva del que lo solicita, como lo sería si la petición fuese la única base para decretarlo, pues con sólo radicar una petición que reuniese los requisitos legales se obtendría el traslado en cualquier caso, fuera o no trasladable. Son las alegaciones de la demanda radicada en la corte estatal o insular, en su caso, las que determinan la índole del pleito. Claro es que si la petición es insuficiente o si no se radica la fianza de rigor, o no cumplen una y otra con los requisitos estatutarios, procede también denegar el traslado, aunque de acuerdo con las alegaciones de la demanda aquél fuere procedente.

▋▋ Examinaremos primero la naturaleza de la demanda radicada por El Pueblo de Puerto Rico a la luz del artículo 28 del Código Judicial de los Estados Unidos y procederemos después a determinar si en efecto concurren en la misma los cuatro requisitos anteriormente enunciados.

Se trata, como hemos visto, de una información de la naturaleza del *quo warranto* en que se alega que las deman-

dadas han violado la sección 3 de la Resolución Conjunta número 23 del Congreso de los Estados Unidos de América, aprobada en mayo primero de 1900 y ratificada por el artículo 39 de la vigente Ley Orgánica. Dicha sección 3, en lo pertinente, dice así:

". . . . y, en lo sucesivo, el dominio y manejo de terrenos de toda corporación autorizada para dedicarlos a la agricultura, estarán limitados por sus estatutos a una cantidad de 500 acres; y esta disposición será adoptada para impedir a cualquier miembro de una corporación agrícola que tenga interés de ningún género en otra corporación de igual índole."

También está basada la querella en nuestra ley de *quo warranto,* según fué enmendada por la número 33 de 22 de julio de 1935 (Leyes de ese año, sesión extraordinaria, pág. 419), que en lo pertinente dice:

"Sección 1.—Por la presente se confiere al Tribunal Supremo de Puerto Rico jurisdicción original exclusiva para conocer de todo procedimiento de *quo warranto* que el Gobierno de Puerto Rico inste en lo sucesivo por violación de las disposiciones de la Sección 752 del Título 48 del Código de los Estados Unidos, y al efecto se dispone que la violación de dichas disposiciones constituirá motivo bastante para que se inicie un procedimiento de la naturaleza de *quo warranto.*"

y en la número 47 de 7 de agosto de 1935 (Leyes de ese año, sesión extraordinaria, pág. 531), también enmendatoria de la de *quo warranto,* que en lo pertinente dice así:

"Sección 2.—Cuando alguna persona usurpare o ilegalmente ejerciere o desempeñare funciones de algún cargo público o hiciere ilegalmente uso de alguna franquicia, . . . o cuando alguna asociación o número de personas actúen en Puerto Rico en concepto de corporación, sin estar incorporadas legalmente; o cuando alguna corporación haga u omita algo que equivalga a la renuncia o a la pérdida de los derechos y privilegios que como a tal corporación le corresponden; o cuando ejercite derechos no conferidos por la ley, el Fiscal General o cualquier fiscal de la respectiva corte de distrito, ya obrando por su propia iniciativa, ya a instancias de otra persona, podrá radicar ante cualquier corte de distrito de Puerto Rico una solicitud para que se instruya información de la naturaleza del *Quo*

*Warranto,* a nombre de El Pueblo de Puerto Rico; o cuando cualquier corporación por sí, o a través de cualquier otra entidad subsidiaria o afiliada, o agente, ejercite derechos o realice actos o contratos en contravención a las expresas disposiciones de la Carta Orgánica de Puerto Rico o de cualquiera de sus estatutos, el Fiscal General o cualquier fiscal de distrito, ya obrando por su propia iniciativa, ya a instancias de otra persona, podrá radicar ante el Tribunal Supremo de Puerto Rico una solicitud para que se instruya información de la naturaleza del *Quo Warranto* a nombre de El Pueblo de Puerto Rico; . . . .

"Cuando cualquier corporación por sí o a través de cualquier otra entidad subsidiaria o afiliada o agente esté poseyendo ilegalmente, por cualquier título bienes inmuebles en Puerto Rico, El Pueblo de Puerto Rico podrá, a su opción, dentro del propio procedimiento, instar la confiscación de dichos bienes, a su favor, o su enajenación en subasta pública dentro de un término no mayor de seis meses a contar desde la fecha en que se dicte sentencia final.

"En todo caso la enajenación o confiscación se hará previa la indemnización correspondiente en la forma establecida en la Ley de Expropiación Forzosa.

" . . . . . . . . . .

"Sección 6.—En caso de que alguna persona o corporación contra quien se haya hecho la petición resultare culpable, la corte podrá dictar su fallo, despojando a dicha persona o corporación del cargo o franquicia a que se refiere la petición, y podrá multar a dicha persona o corporación por la usurpación o desempeño ilegal de tal cargo, o de dicha franquicia, o su intrusión en él o en ella, y podrá también imponer al demandado el pago de las costas de las actuaciones; . . .

"En todos los casos en que quedare satisfactoriamente probado, a juicio de la corte, que la corporación o corporaciones, han realizado actos o ejercitado derechos no conferidos por la ley, o en contravención a las expresas disposiciones de la misma, en la sentencia que recaiga se decretará la disolución de la entidad demandada, si fuere doméstica, la prohibición de continuar haciendo negocios en el país si fuere extranjera, la nulidad de todos los actos y contratos realizados por la corporación o entidad demandada, y se decretará, además, la cancelación de los asientos o inscripciones que los mismos hayan producido en los registros públicos de Puerto Rico, y cuando el decreto de nulidad afecte a bienes inmuebles y El Pueblo de Puerto Rico hubiere optado por su confiscación, o se ordenare la venta en pública subasta, la sentencia final fijará el precio razonable que deba

pagarse por los mismos. A estos efectos deberá fijarse el justo valor de los bienes sujetos a enajenación o confiscación en la misma forma fijada en los casos de expropiación forzosa.

"La infracción de la orden prohibiendo hacer negocios después de dictada sentencia firme será penada con multa máxima de quinientos (500) dólares por cada día que la entidad continuare ejerciendo sus funciones, ejecutable en los bienes de la entidad, y las personas que las representan incurrirán en desacato a la corte, castigable con pena mínima de uno a seis meses de cárcel.

"Siempre que se pronuncie alguna sentencia a favor de algún demandado, éste podrá recobrar del demandante las costas, incluyendo una suma razonable para honorarios de abogado.

"A los fines de fijar el valor de los bienes El Pueblo de Puerto Rico, por conducto de sus agentes o representantes, queda autorizado para penetrar en las fincas o bienes objeto de controversia cualquiera que sea su naturaleza y condición."

Aparece de la faz de la querella que cuando las tres demandadas surgieron a la vida jurídica y cuando empezaron a hacer negocios en Puerto Rico, imperaba ya en esta Isla la Resolución Conjunta número 23, de primero de mayo de 1900, aprobada por el Congreso de los Estados Unidos, cuyo contenido en lo pertinente ya conocemos; de manera, pues, que su derecho a hacer negocios aquí estuvo condicionado desde el primer momento al cumplimiento de la expresada disposición legal. Se alega además que las tres entidades demandadas son el resultado de un plan o combinación para burlar la limitación legal sobre tenencia de tierras en exceso de quinientos acres, poseyendo, como se alega que poseen, tierras que exceden considerablemente de la permitida por la ley.

Termina la querella con la siguiente súplica:

"Por lo tanto, el Pueblo de Puerto Rico, por su Procurador General suplica (1) en cuanto a la demandada South Porto Rico Sugar Company (Puerto Rico), se dicte sentencia de pérdida de franquicia, ordenando su disolución inmediata, prohibiéndole seguir haciendo negocios en Puerto Rico e imponiéndole la multa correspondiente; (2) en cuanto a la codemandada South Porto Rico Sugar Company (New Jersey), que se dicte sentencia condenándola a cesar y desistir

de llevar a cabo negocios en la Isla de Puerto Rico; (3) en cuanto a Russell & Co., Sucesores, que se dicte sentencia declarando que fué y es ilícito el objeto de su constitución; que es una sociedad inexistente, y ordenando su disolución inmediata; y (4) por último, en cuanto a todas las demandadas, todos los pronunciamientos que en equidad y justicia sean procedentes.''

Por la síntesis que hemos hecho de la querella, fácilmente se comprende que se trata de una información de *quo warranto* que es de naturaleza civil, y sobre lo cual no hay contienda entre las partes.

¿Existe el segundo requisito exigido por el citado artículo 28 para que proceda el traslado? Ése es precisamente el nervio de la cuestión. El querellante lo niega enfáticamente y dedica una parte de su brillante alegato a sostener su proposición. Las demandadas asumen su existencia y no profundizan en la materia. La cuestión a determinar es si la Resolución Conjunta número 23, de mayo primero de 1900, y nuestra Ley Orgánica de 1917, a pesar de ser, como son, leyes aprobadas por el Congreso de los Estados Unidos, pueden considerarse, por su carácter local, como leyes de los Estados Unidos a los efectos de un traslado a la Corte Federal; o si, por el contrario, por su naturaleza o carácter puramente local deben considerarse a esos mismos efectos como estatutos de Puerto Rico que no dan derecho al traslado.

La cuestión no es nueva en esta jurisdicción. Este tribunal, en otro caso de igual índole—el de *Pueblo* v. *The Fajardo Sugar Co. of P. R.,* 50 D.P.R. 163, 179—por voz de su Juez Presidente Sr. Del Toro exteriorizó su criterio sobre el particular en los siguientes términos:

"Toda la Carta Orgánica demuestra que el Congreso estaba estableciendo una forma territorial de gobierno con el mismo control sobre las corporaciones creadas por él o haciendo negocios dentro de sus límites, que el que pudiera tener un estado o cualquier otro territorio. Por consiguiente, ya que las franquicias son concedidas por Puerto Rico y su gobierno tiene control sobre las corporaciones dentro de sus límites, la inferencia inevitable es que la violación de la franquicia o la tenencia de tierras en exceso de quinientos acres

es una cuestión local. Es inconcebible que la violación de una carta constitutiva o de la carta orgánica debiese ser excluída del control de Puerto Rico. Sería tan posible decir que una violación de la llamada 'Declaración de Derechos' es materia exclusivamente de jurisdicción federal, y así sucesivamente, de cualquier otra disposición de la carta orgánica.''

Ampliando el pensamiento del Juez Presidente podríamos agregar que si aceptásemos la proposición de las querelladas nos conduciría al absurdo de tener que sostener que cada vez que se alegue en algún pleito ante nuestros tribunales que una ley local infringe la cláusula constitucional sobre ''el debido proceso de ley'' o ''igual protección de las leyes'', o cualquiera otra de las limitaciones constitucionales expresadas en el artículo 2 de nuestra Ley Orgánica, se levanta una cuestión federal y si la cuantía en controversia excede de $3,000, puede el demandado solicitar el traslado para ante la Corte de Distrito de los Estados Unidos para Puerto Rico.

Indudablemente el Congreso no pudo tener en mente sancionar tan absurda situación.

Y no es sólo este tribunal quien ha sostenido el criterio antes enunciado. En el territorio de Alaska, donde se levantó la cuestión sobre la naturaleza del código de dicho territorio, generalmente conocido por Código de Alaska, aprobado, desde luego, por el Congreso de los Estados Unidos, se dijo lo siguiente:

''Al aprobar la ley de 6 de junio de 1900 (31 Stat. 321, c. 786), generalmente conocida por *Alaska Code,* el Congreso ejerció sus poderes de gobierno estatal y ese código, que es prácticamente idéntico al de Oregon y a los de otros estados con códigos, debe considerarse e interpretarse como si hubiera sido aprobado por la asamblea legislativa de un estado.'' *Allen* v. *Myers,* 1 Alaska 114, 118.

A este respecto la Corte Suprema de los Estados Unidos ha dicho:

''La jurisdicción de que están investidas no es parte del poder judicial que define el artículo 3º. de la Constitución, sino que la confiere el Congreso al ejercitar aquellos poderes generales que ejerce

ese cuerpo sobre los territorios de los Estados Unidos. . . . Al legislar para éstos, el Congreso ejerce los poderes combinados del gobierno general y del de un estado.'' *American Insurance Co.* v. *Canter,* 26 U. S. 511, 546, 7 L. ed. 242, 256; *Benner* v. *Porter,* 50 U. S. 235, 13 L. ed. 119.

Por lo expuesto, sostenemos que se trata en este caso de un estatuto que, aunque aprobado por el Congreso de los Estados Unidos, tiene carácter local, y es, a los efectos del traspaso solicitado, como si hubiese sido aprobado por la Asamblea Legislativa de Puerto Rico.

Siendo como es el deber de las cortes estatales, y por analogía de los tribunales insulares, al presentarse ante ellos una moción de traslado determinar por sí mismos si el caso es o no trasladable (*El Pueblo* v. *Rivera Zayas, Juez,* 29 D.P.R. 454; *Miles* v. *Layton,* 112 A.L.R. 786, 790 (193 A. 567); *Madisonville Traction Co.* v. *Saint Bernard Min. Co.,* (196 U. S. 239) 49 L. ed. 462; *Southern Pacific Co.* v. *Waite, et al.,* 279 F. 171), y entendiendo como entendemos que no existe el segundo de los requisitos exigidos por el artículo 28 del Código Judicial para que proceda el traslado a una corte federal, es decir, la determinación de una cuestión federal, *procede, a nuestro juicio, denegar la petición de las demandadas y retener la jurisdicción que hemos asumido en este caso.*