DAVID CRONHEIM AND RUTH SAMPSON, INDIVIDUALLY, AND RUTH SAMPSON AS REPRESENTATIVE OF THE HOLDERS OF VOTING TRUST CERTIFICATES FOR CLASS "A" STOCK, AND HOLDERS OF CLASS "B" STOCK OF THE TWENTY-SIX JOURNAL SQUARE CORPORATION IN DISSOLUTION, WHO DID NOT RECEIVE THEIR FIRST, SECOND, OR THIRD LIQUIDATING DIVIDENDS, PLAINTIFFS-APPELLANTS, v. GEORGE G. TENNANT, JR., AND JOHN A. HARTPENCE, DEFENDANTS-RESPONDENTS.

Argued May 19, 1959—Decided June 30, 1959.

*Mr. Max Brustin* argued the cause for plaintiffs-appellants.

*Mr. John A. Hartpence* argued the cause for defendants-respondents.

The opinion of the court was delivered by

SCHETTINO, J.   Appeal is taken from a Superior Court, Chancery Division, judgment, granting defendants' motions for a change of venue and to strike the complaint on the ground that it fails to state a claim for relief and to dismiss the action with prejudice.   Plaintiffs appealed to the Appellate Division and we certified under *R. R.* 1:10–1(*a*).

As we view the present litigation, plaintiffs are attempting to nullify by a collateral attack a final judgment and a supplemental order entered in a previous action entitled *Tennant v. Wolf,* Superior Court, Chancery Division, Bergen County, *Docket No.* C–1956–49 (hereafter referred to as the *Tennant* suit).   The judgment is dated January 12, 1951 and the supplemental order is dated January 25, 1952.   By the terms of the judgment the records of the corporation involved, with certain exceptions therein noted, were directed to be destroyed and all claims, except those specifically referred to, were forever barred.   The impact of the *Tennant* case judgment and order produced this present action.   In the

present suit, the trial court considered the record in the *Tennant* suit.

A factual history of the *Tennant* suit is necessary for the present determinations. The Twenty-six Journal Square Corporation in dissolution (hereafter referred to as "Journal Square") was a successor corporation to Union Labor Investment Corporation, a bankrupt. Journal Square was incorporated about March 15, 1937, for the purpose of taking title to and holding the bankrupt's assets which included a business property and office building. By a federal court order in reorganization proceedings, one of the present defendants, Tennant, and two others were appointed voting trustees to hold all of the Class "A" or voting stock of Journal Square. These three and two others served as officers and directors of Journal Square from March 15, 1937 up to December 31, 1946.

On December 31, 1946, in accordance with a more than two-thirds vote of all classes of stockholders and with the unanimous vote of the five directors and pursuant to *R. S.* 14:13–1, a certificate of voluntary dissolution was filed with the Secretary of State of New Jersey on behalf of Journal Square. Thereafter, the same five men served as trustees in dissolution. After all creditors were paid, the trustees declared and distributed three liquidating dividends on March 25, 1947, February 16, 1948 and January 25, 1950. The total sum of the three dividends, at $15.05 per share, amounted to more than $395,000. Plaintiff, Ruth Sampson, admittedly received her first two dividend checks but did not receive her third dividend of $1,994.38.

On June 7, 1950 defendant Tennant, through his attorney, defendant Hartpence, filed the *Tennant* suit seeking to compel his co-trustees to submit an accounting to the court. After due notice to all parties in interest, an order was entered, directing the trustees to prepare and file an account. The account covered the period from December 19, 1946 through August 31, 1950, and as of October 2, 1950 showed a balance in cash amounting to $1,398.48, as well as deposits

of $10,295.35 representing the total of uncashed dividend checks which had been mailed to stockholders at their last known address and returned to Journal Square as undeliverable.

On October 20, 1950 an order was issued and made returnable on January 12, 1951, directing all stockholders and other parties who might have an interest to show cause why the account should not be approved, why accounting fees should not be paid, why the trustees should not be authorized to abandon all interest in a certain judgment claim (not here relevant), why all Journal Square's records except shareholder lists should not be ordered destroyed, and why the trustees should not be discharged after payment and disbursement of fees and allowances. The order specifically stated that payments of compensation and fees were to be made "so far as there may be no other funds available, from the amounts now on deposit in the several liquidating dividend accounts presently maintained." On November 8, 1950 a copy of the order was mailed to each of the numerous stockholders and voting trust certificate holders. Some of the notices were returned because the addressees could not be located by the post office. Additionally, as required by the order, the notice was published in a Jersey City newspaper once a month during four successive months prior to January 12, 1951.

On the return day, January 12, 1951, an order was signed allowing compensation of $750 to an accounting firm; $3,500 to defendant Tennant, for services as statutory trustee; and $2,500 to defendant Hartpence, for services as the statutory trustee's attorney. All compensation was directed to be paid at first from the balance of cash on hand, and then from the funds on deposit in the unclaimed liquidating dividend accounts. The order also provided that the balance remaining after such payments was to be turned over to the Clerk of the Superior Court. The balance amounted to $3,857.33 and was deposited with the clerk on February 19, 1951.

In a petition for instructions, dated October 23, 1951, in the *Tennant* suit, Tennant stated that subsequent to depositing the balance with the clerk, at least ten of the non-claiming shareholders appeared and requested information as to how they might obtain their dividends, and that the clerk received similar inquiries and requested Tennant to apply for further instructions from the court. On that day an order to show cause was issued why a supplemental order should not be entered providing for the payment of a final *pro rata* 20% dividend to stockholders who had not received the prior dividends, why any stockholder not then claiming should not be forever barred, and why additional fees should not be paid to the present defendants. Mailing to shareholders was specifically dispensed with by the ·order. However, notice of this order was published for six successive weeks in the same Jersey City newspaper. On the return day, November 30, 1951, a supplemental order was entered setting December 21, 1951 as the final date for unpaid shareholders to file claims qualifying them for the 20% dividend. Notice of this order, although not required by the court, was published in the Jersey City newspaper on December 7 and 14, 1951.

On January 21, 1952, a final report was filed by Tennant setting forth the claims of six shareholders who had filed their claims. At this time the trial court awarded a like amount of $1,651.57 each to Tennant and Hartpence for the additional services rendered on the petition for instructions and on the subsequent steps. All other claims of stockholders not then provided for were ordered forever barred. After the stockholders and defendants were paid, nothing remained in the clerk's accounts.

The present complaint alleges that plaintiffs have just recently learned of the *Tennant* suit; that they had no knowledge and received no notice or communication of the proceedings which led to the judgment of January 21, 1951, and to the final supplemental order of January 25, 1952; that the money segregated to pay the liquidating dividends

constitute a trust fund which was wrongfully invaded both in January 1951 and January 1952 to pay compensation to the trustee and his attorney; and that the January 1951 judgment and the January 1952 order were invalid and deprived plaintiffs of their property without due process of law. Additionally, the complaint alleges that when Tennant and his co-trustees declared and set aside the first, second and third dividends which were undeliverable, unclaimed or uncollected by the stockholders in interest, they entered into a special trust relationship to the unpaid stockholders, whether known or unknown, that with respect to these dividends they belonged to each such stockholder severally in equity, that the trustees could not divert or use these funds for any purpose other than to hold them for the equitable owners, and that therefore they were co-trustees of plaintiff Ruth Sampson for her unpaid dividends. Plaintiffs also charge that Tennant violated this special trust; that both defendants here "wrongfully procured" the various orders and judgment entered in the original *Tennant* action, and that Tennant was guilty of self-dealing with trust funds. Plaintiffs also alleged that as they received no notice and had no knowledge of the proceedings leading up to the January 12, 1951 judgment and the final supplemental order of January 25, 1952, these two orders should be set aside on the grounds that they are void and against equity and good conscience.

Plaintiff Cronheim claims that he is the real party in interest, that he paid for the stock, and that he took title to it in his daughter's name. The daughter is plaintiff Ruth Sampson.

Plaintiffs' counsel was asked at oral argument as to just when plaintiff Ruth Sampson had moved to the New Jersey shore from Essex County. By letter dated May 20, 1959 her attorney informed us that she had moved in mid-year 1946 before any liquidating dividend had been mailed. She admitted receipt of the first two dividend checks, but denied receiving any notice whatsoever subsequent to the second

dividend check in 1948. We note that the present complaint was filed on June 30, 1958.

The venue of the present action was laid in Essex County, the county of residence of one of the plaintiffs, David Cronheim. As stated above, the venue in the *Tennant* action was Bergen County.

Defendants' motions were made returnable on July 18, 1958, before the same judge who tried the original *Tennant* case. This trial judge sat because he was the sole Chancery judge sitting in the northern New Jersey vicinages during that period of the summer. In dismissing the complaint, the court said:

> "* * * Plaintiffs are seeking to attack collaterally a judgment which they could and should have attacked directly. All parties had notice of the proceedings. There was a complete absence of fraud. The court had jurisdiction of the subject matter and of the parties."

The trial court properly considered the record in the *Tennant* case in its determinations here. *Taylor v. New Jersey Highway Authority*, 22 *N. J.* 454, 459 (1956).

Defendants' motion for change of venue was based upon the ground that plaintiffs' complaint should have been a step in the original *Tennant* suit. As the trial judge had jurisdiction, we find it unnecessary to discuss the issue of venue.

Defendants' motion under *R. R.* 4:12–2(*e*) to strike the complaint on the ground that it failed to state a claim upon which relief could be granted, was bottomed upon the complaint and the exhibits annexed to it. The complaint refers to the original *Tennant* suit and the exhibits are part of the *Tennant* action. Although not specifically so stated by either party or the trial court, defendants' motion to strike the complaint was treated not only as one to strike (*R. R.* 4:12–2(*e*)) but also as a motion for summary judgment (*R. R.* 4:58–2). See 2 *Schnitzer and Wildstein, N. J. Rules Service,* A IV–251, 252. We also so treat the motion.

Notices of all steps taken through the judgment of January 12, 1951 complied with *R. R.* 4:4–5, 4:85–2, 3 and 4:106–3 in that both mail notice and publication notice requirements were followed. Plaintiffs' counsel concedes that plaintiffs could not dispute so much of the record as shows that, as directed by the court, such notices were given by mail and by publication to Mrs. Sampson.

In the account and affidavits attached thereto filed on October 20, 1950 in the *Tennant* case, plaintiff Ruth Sampson was listed as a holder of a voting trust certificate for Class A stock and her address was given as 169 Highfield Lane, Nutley, New Jersey. In the schedule of uncollected liquidating dividend holders, Ruth Sampson was credited with not having collected her share of the third liquidating dividend amounting to $1,994.38. The same address was listed for her.

We note that Tennant's affidavit of mailing, dated January 11, 1951, concerning the notice of the October 20, 1950 order to show cause stated: "Subsequent to said mailing of said notice on November 8, 1950 more than 93 of said notices have been returned to this deponent by the United States Post Office with one or more of the following notations thereon: 'Removed,' 'Cannot Be Found', 'Not Found'." Tennant listed therein the names of 33 stockholders whose addresses had been changed and corrected subsequent to the date of the order to show cause. Plaintiff's name was not one of them.

We also note in Tennant's petition for instructions, dated October 23, 1951, that about 100 notices and settlement of accounts had been returned by the United States Post Office as "Not Found" and that checks for uncashed liquidating dividends had been mailed to the stockholders at their last known addresses and either had been returned marked "Addressee is Not Found" or had not been presented for payment. No list of these stockholders was noted in that record. The order to show cause, dated the same day, specifically stated "that at least one hundred (100) of the aforesaid

notices which were mailed out to stockholders were returned to the sender by the United States Post Office with the notation stamped on the envelopes 'Not Found' * * *" and provided that "mailing to the stockholders of the Twenty-six Journal Square Corporation be dispensed with." On January 25, 1952 Tennant filed his "Report of Petitioning Trustee," summarizing the notices both by mail and by publication—which had theretofore been given to stockholders and voting trust certificate holders as follows: Notices had accompanied three separate liquidating dividend checks which were made payable to the stockholders and voting trust certificate holders and said notices were placed in the mails on or about March 25, 1947, February 16, 1948 and March 9, 1950; copies of the order to show cause dated October 20, 1950 were mailed to all stockholders and voting trust certificate holders on November 8, 1950 and were published in the Jersey City newspaper on October 27, November 17, December 15, 1950 and January 8, 1951; a copy of the order to show cause dated November 23, 1951 was published in the same newspaper on October 25, November 1, 8, 15, 22 and 29, 1951; notice of the entry of the supplemental order, dated November 30, 1951, and a summary of the terms contained in that order were published in the newspaper on December 4, and 14, 1951. All notices were mailed to the last known addresses of record of the stockholders and the holders of voting trust certificates.

In view of the sufficient adherence to the rules on the requirement of notice by mail as well as notice by publication up to the time the petition for instructions was filed, it is reasonable to assume that the trial court must have decided that service by mail to the 100 or so addressees whose mail had been undeliverable would have been futile and a waste of money. Notice by publication in an appropriate situation is sufficient to comply with procedural due process. *State by Parsons v. Standard Oil Co.*, 5 *N. J.* 281, 307 (1950); *State v. American-Hawaiian Steamship Co.*, 29 *N. J. Super.* 116, 127 (*Ch. Div.* 1953). We conclude

that the trial court under the special circumstances existing in the *Tennant* case and in the exercise of his discretionary power under *R. R.* 1:27*A* quite properly relaxed the require-ment for mailing. We find no reversible error in the failure, after the January 12, 1951 judgment, to notify plaintiff, Mrs. Sampson, by mail.

█ As a party to the original action, she was required to appeal within ten days after the judgment of accounting was signed and entered on January 12, 1951, if assumed to be interlocutory, (*R. R.* 1:3–1(*c*)), or 45 days within which to appeal from the signing and entry of the final supple-mental order of January 25, 1952. (*R. R.* 1:3–1(*b*)). Even under *R. R.* 4:62–2(*c*), involving a motion to be relieved of a final judgment or order on the ground of fraud, the motion is required to be made within a reasonable time but not more than one year after the judgment or order. (But see *R. R.* 4:62–2(*d*) if the "judgment or order is void"). Under any one of these provisions plaintiffs are barred by these limitations.

█ Plaintiffs charge that defendant Tennant was their trustee of the undistributed liquidating dividends, (*State by Parsons v. Fidelity Union Trust Co.,* 25 *N. J.* 387, concurring opinion at *page* 402 (1957)); that he breached the trust when he sought to have paid from the trust *res* allowances for services he rendered as trustee in liquidation, thus cast-ing upon plaintiffs the burden which should have been shared by all benefiting from the liquidation. *In re Central New Jersey Land & Improvement Co.,* 113 *N. J. Eq.* 332, 334 (*Ch.* 1933); *State by Parsons v. Standard Oil Co. of New Jersey,* 5 *N. J.* 281, 298–304 (1950), affirmed 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951), and *State by Parsons v. Fidelity Union Trust Co.,* 25 *N. J.* 387, 397 (1957). Hence they contend that Tennant and his attorney should be deemed to be constructive trustees of the moneys received by them under the 1951 judgment and the 1952 order. Plaintiffs do not, however, charge any fraudulent purpose and, in the argument before us, a charge of fraud was dis-

avowed. In these circumstances, it seems to us that the essence of the charge is that the judgment and order were erroneous in law. In our view a constructive trust cannot be mounted upon that premise.

██ We should not be understood to agree with the extraordinary dispositions accomplished by the 1951 judgment and 1952 order. We do not reach their merits because there is a larger public policy which requires that finality be given to judgments. Here, the requirements of due process were satisfied and the trial court had the power to render the judgment and order. This policy compels us not to disturb the judgment and order. *Cf. Miles v. Layton,* 8 *W. W. Harr.* 411, 38 *Del.* 411, 193 *A.* 567, 112 *A. L. R.* 786 (1937); 30A *Am. Jur.* 618.

Affirmed, without costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.