GEORGE SCHWANDER, d. b., v. FEENEY'S, a Delaware corporation, p. b.

200

(*December* 17, 1942.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*William Prickett* for defendant below.

*Joseph A. L. Errigo* for plaintiff below.

Superior Court for New Castle County, No. 140, May Term, 1942.

RODNEY, J., delivering the opinion of the Court:

Before considering the exceptions filed we shall briefly consider the availability of certiorari proceedings when directed solely to an execution issued by a Justice of the Peace on a concededly valid judgment. In Delaware, it is a broad general rule that a writ of certiorari lies from a superior court to inferior tribunals to correct errors of law,

to review proceedings not conducted according to law, and to restrain an excess of jurisdiction. *Woolley on Delaware Practice,* Sec. 896. Because the jurisdiction of a Justice is purely statutory in origin it has been uniformly held all jurisdictional features must appear upon the record, and the review accorded by the writ of certiorari is confined to the record. The precise question here involved is no new one. A number of cases have involved certiorari proceedings directed solely to error apparent in the execution made part of the record. *McClay v. Houston,* Adm'r, 1 *Harr.* (1 *Del.*) 529; *Cooper v. May,* 1 *Harr.* (1 *Del.*) 18; *Shannon v. Allen,* 4 *Harr.* (4 *Del.*) 326; *Spear v. Hill,* 2 *Marv.* (16 *Del.*) 150, 42 A. 424; *Messick v. Coulter,* 1 *W. W. Harr.* (31 *Del.*) 212, 113 A. 804. See also *Mousely v Allmond,* 4 *Harr.* 92, and *Elligood v. Hazzard,* 3 *Harr.* 68, where the certerioraris were to both judgment and execution. The judgments were affirmed and the executions set aside.

We must now consider the exceptions in their order:

1. We will first address ourselves to the necessity of insertion at some place in the record of a determination of the nature or origin of the claim of the creditor where wages are attached. That is to say, the determination as to whether the claim of the plaintiff be for board or lodging or for the necessaries of life, since they are the only bases of claim for which wages can be attached.

Prior to February 2, 1875 (Laws of Delaware, Vol. 15, c. 185, p. 309) it would seem that wages like other debts or claims were attachable. From this it might be reasoned that after wages had been exempted from execution process such wages resembled other exempt property—the exemption being a right to be solely raised or claimed by the party entitled, and that the exemption or lack of it was not a jurisdictional fact to be set out in the record. The answer to this is two-fold. It both grows out of the fact that, under the statute, no wages are absolutely exempt, and is also im-

plicit from the peculiar nature of garnishment proceedings. (1) Under the statute all wages are attachable for board or lodging, or both, and ten per centum of such wages are attachable for certain articles called the necessaries of life, and it is only on claims arising from some other source that wages are exempt from attachment. Some determination must therefore be made as to the origin of the claim, in order that the exemption or lack of exemption may definitely appear. (2) The very nature of garnishment proceedings, too, requires that when wages are attached the origin of the claim supporting the attachment should clearly be made known. Garnishment proceedings, after judgment, are, in substance if not in form, very similar to execution process with which it is generally associated. It is ancillary process to which the original debtor is not a party, and usually no notice is required to be given the debtor of the appearance of the garnishee. See cases and authorities collected in *First National Bank v. Knight,* 127 Okl. 20, 259 P. 565, 570.

It is true that a debtor after judgment may get an implied notice of the garnishment of his rights and credits by reason of the withholding of such credits, but this notice is of a different kind than he received by reason of an attachment of his rights or credits before judgment. In the latter case the primary purpose of the attachment is to compel the appearance of the defendant in the suit to which he is a party; in the former case of garnishment proceedings the object is to obtain an additional judgment against the garnishee and thus collect the original debt.

It is explicit under our law that the garnishee shall be able to plead the judgment recovered against him in the garnishment proceeding in bar of any subsequent suit against such garnishee by the defendant in the attachment. Our law expressly so provides. *Woolley on Delaware Practice,* p. 820; Revised Code of 1935, Sec. 4618; Sec. 4846. It has been held, however (*Philadelphia W. & B. R. Co. v.*

*Sharpe,* 2 *Penn.* (18 *Del.*) 407, 47 A. 700), that where a garnishee had allowed judgment to be entered against it for wages due for personal service, where the origin of the debt was neither board or lodging, or necessaries of life, that such judgment could not be pleaded in bar of a subsequent suit by the debtor against the garnishee. It would seem, then, that where wages are attached under post-judgment garnishment proceedings, either the record should somewhere affirmatively show that the origin of the debt was such that would justify the attachment of wages, or that the garnishee must assume the burden of determining whether the wages were or were not, in law, attachable. For reasons hereinafter discussed, we think this is no proper function of the garnishee.

We think that where wages, generally exempt and attachable only in a limited class of claims, are sought to be attached, that somewhere in the record there must appear the jurisdictional fact that the claim is within the limited and favored class. Where should such fact appear? It is argued that this Court need not determine this question, but having determined that the jurisdictional fact must be set out in the record, and it failing so to appear, that the certiorari should be sustained. We cannot so view our duty. The record consists of at least two severable parts, the judgment and the execution. If the jurisdictional fact is required to be set out in the judgment, and does not so appear, then the judgment should be set aside. If, on the contrary, the jurisdictional fact relative to the execution for wages need not appear in the judgment, then such judgment should not be set aside, but should remain as a basis for any future valid execution process that might be issued.

We do not think the judgment, when obtained, need forecast the eventual source from which it may be paid. The judgment, as such, may be entirely correct and proper without reference to the future source of its payment. This

is conceded, and no objection is made to the judgment in the present proceeding.

So, too, an execution issued upon a valid judgment by a Justice of the Peace does not designate the nature of the property which may be seized by the execution. The rendition of the judgment and issuance of the execution are the express duties of the Justice, who is, or is supposed to be, entirely disinterested in the collection of the debt. We note in the brief those references to the supposedly general practice of Justices of the Peace having a financial interest in and obtaining a percentage of claims brought to them for legal determination. No words of ours can too strongly show our disapproval of a judicial officer having a financial interest in the result of his own judicial action. The Justice is, or should be, without knowledge or interest in the property to be taken by the execution, and he is presumably without knowledge of the garnishees to be summoned, if any. Their names are not in the execution when it leaves his hands, and it is no part of his judicial function to know that wages are to be attached.

When the execution, with clause for summoning garnishees, comes into the hands of the constable, he, normally, receives information from the plaintiff as to the sources from which the execution can be made. The constable and, perhaps, the plaintiff, are responsible for the correctness of the levy. While not directly here involved or calling for decision, it has been held that a wrongful levy, including a levy on exempt property, constitutes a trespass. 23 C. J. 971; 33 C. J. S., *Executions,* § 453, p. 836.

When a constable lays an attachment in the hands of an employer and thus attaches wages, he summons the garnishee to appear at that designated place, date and hour fixed by the Justice of the Peace. The constable then makes return of his action. In this return the constable cannot determine the legality of such attachment nor decide

that the origin of the claim was such as would authorize such attachment. The question as to what·constitute "articles used in the home commonly designated as the necessaries of life" is, we think, a mixed question of law and fact not to be determined by the plaintiff, by the garnishee, or by the constable, but solely in a judicial proceeding. The answer to the question is undoubtedly affected by the passing of years, and articles may now be considered necessary which a century ago could not be so considered. The true answer to the question, perhaps, may vary with the circumstances of the parties, and thus be dependent upon the facts of each particular case.

When a garnishee appears according to his notice and answers or pleads, there comes into existence a new proceeding looking toward a new judgment. The Justice knows from the return that wages have been attached, or he can so ascertain; he knows that wages can be attached solely for board or lodging or the necessaries of life. Before the plaintiff can obtain judgment against an employer holding in his hands attached wages of an employee, such plaintiff must establish to the Justice that he is entitled to such judgment; that is to say, that he has a claim upon which those specific wages can legally be attached. Here is a time, then, when a proper judicial determination may be had. This should be had after proper notice to the plaintiff, to the defendant, and to the garnishee. Any supposed practice by which a constable merely notifies an employer of a claim and collects the attached wage without appearance of the garnishee, or determination of the validity of the attachment, can not be supported.

We do not say that the jurisdictional fact of the liability of wages to attachment may not appear in some part of the record not herein specifically considered, but we do say that it should and must appear in some place, and that that place where the liability of the garnishee for those iden-

tical wages is fixed by judgment against him would be a proper place.

The determination of the Justice, we assume, without deciding, would be subject to review by appeal or otherwise and always, in addition there exist those broad powers conferred on this Court by Sec. 4275, Revised Code of 1935, which provides, in part, that the Superior Court "shall have full power and authority, to examine, correct and punish the contempts, omissions, neglects, favors, corruptions and defaults of all justices of the peace, sheriffs, coroners, clerks or other officers * * * and generally shall administer justice to all persons * * *."

2. The defendant below contends that the execution is invalid because it is for an amount exceeding $50. It will be seen from the statute set out in our preliminary statement that wages can be attached for board or lodging, or both, where the claim does not exceed fifty dollars. We are asked to wrest this limitation of amount from the section in which it appears, and insert it also in an entirely different section applying to attachment for a different cause, and to which it may not have been intended. We cannot do this. For board and lodging, or both, one hundred per centum of the wages are attachable, and the legislature may have well felt that under those circumstances the amount of claim should be limited. The same reasoning would not necessarily apply where wages are attached for "articles used in the house commonly called the necessaries of life." Here only ten per centum of the wages are attachable and the legislature has not indicated that in such case the claim should be limited to $50. We would not thus infringe upon the clear field of legislative action, or impute to the Legislature a result which may have been entirely foreign to its intention.

3, 4 and 5. These exceptions may be grouped together, for they all relate to the deficiences of the record, with reference to the garnishee. The provisions of law with

reference to answers of garnishees differ materially between the provisions applying to the Superior Court and those affecting Justices of the Peace. In the Superior Court no special time for appearances of garnishees is expressly set out, but answer or pleading must be required within two terms, or the attachment will be dissolved. In proceedings before a Justice, the law, Sec. 4509, expressly requires that the garnishee be notified to appear at a designated place, on a designated date, and at a designated hour. Except by adjournments the Justice has no general right to take the return at other times, and these requirements are jurisdictional, and must appear in the record. *Hamilton's Garnishee v. Allen,* 4 *Harr.* 326.

The record does not show that the garnishee was notified to appear on any designated date, or at any designated hour, or that it has ever appeared at all. The record, then, is clearly defective.

The certiorari is sustained and the execution below is set aside and procedendo will issue.