**Louis H. OSMOND et al., Plaintiffs,**

v.

**Ernest S. SPENCE \* et al., Defendants.**
**Civ. A. No. 3940.**

United States District Court,
D. Delaware.

May 13, 1971.

---

\* Subsequent to the commencement of this action, defendant Ernest S. Spence has replaced John J. Smith as Sheriff of New Castle County, and defendant Paul E.

Elwyn Evans, Jr., and John S. Stoppelman of the Community Legal Aid Society, Inc., Wilmington, Del., for plaintiffs, Louis H. and Marie L. Osmond, Stanley M. Burton, William L. and Jesse Mae Barbour, Stella M. (Dawkins) Townsend, Clarence W. and Shelly J. DuBois, Henry C. and Marie D. Dehoyos and Karl B. Ebert.

David Roeberg, of Sullivan, Potter & Roeberg, Wilmington Del., for plaintiffs, John and Joan Walsh, and Joel Katz.

John M. Bader, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff Robert F. Gregg.

William J. Wier, Jr., and Bertram S. Halberstadt, Wilmington, Del., for the American Civil Liberties Union, appearing in behalf of the plaintiffs as amicus curiae.

Joseph J. Longobardi, of Longobardi & Schwartz, Wilmington, Del., for defendant Ernest S. Spence.

Robert E. Daley, Asst. New Castle County Atty., Wilmington, Del., for defendants, Paul E. Neill and Eleanor Riley.

Martin I. Lubaroff, of Richards, Layton & Finger, Wilmington, Del., and Eduard F. von Wettberg, III, of Morris, James, Hitchens & Williams, Wilmington, Del., for Delaware Bankers Ass'n.

Alfred J. Lindh, of Taylor, Lindh, Paul & Biden, Wilmington, Del., for Lease Service Associates for Delaware, Inc.

Samuel Handloff, Wilmington, Del., for Signal Finance Corp. of Newark.

Frederick Knecht, Jr., Wilmington, Del., for Associates Discount Corp., Colonial of Delaware, and Cooper's Home Furnishing.

Before VAN DUSEN, Circuit Judge, and WRIGHT and LAYTON, District Judges.

## OPINION

LAYTON, District Judge.

This is a purported class action by six [1] plaintiffs to have declared unconstitutional certain statutes and Delaware Superior Court rules which permit the entry of judgments by confession upon warrant of attorney. Plaintiffs have also prayed for preliminary and permanent injunctions restraining the Prothonotary and Sheriff from recording or executing upon such judgments.

Pursuant to T. 28 U.S.C. Sec. 2281, a three-judge court was named to hear and decide the case.

Delaware Bankers Association "DBA", an unincorporated association, was permitted to intervene in opposition to plaintiffs' motion for a preliminary injunction. Although certain creditors have upon application intervened as parties defendant, for all practical purposes DBA has taken over the defense of this action.

A Temporary Restraining Order was entered by a single judge of this Court on November 4, 1970,[2] restraining the nominal defendants, their deputies and

---

1. There were six original plaintiffs and nine subsequent intervenors.

2. This order superseded previous orders entered on July 28, 1970 (as amended on August 24, 1970) and August 12, 1970.

all others acting in concert with them from:

(1) Executing upon or selling any real or personal property, including wages, of the named individual plaintiffs upon confessed judgments docketed pursuant to 10 Del.C. Sec. 2306 and Del. Super.Ct. (Civil) R. 58(b);

(2) Serving writs of attachment fi fa issued by the Prothonotary on confessed judgments docketed pursuant to the above-cited Delaware statute and rule of court on employers of confessed judgment debtors to attach wages;

(3) Delivering money now being collected by various employers of the class of confessed judgment debtors who have confessed judgment of the type described above docketed against them, to the judgment creditors who have issued wage attachments;

(4) The order was issued without prejudice to the Prothonotary and Sheriff to serve wage attachments against a confessed judgment debtor in cases where it could be demonstrated that debtor had understandingly waived his right to notice and an opportunity to be heard prior to (or subsequent) judgment.[3]

Following a hearing on the merits by the full Court on December 23, 1970, the Temporary Restraining Order was continued until final hearing on March 1, 1971, or until final disposition.

Because this suit seeks to nullify 10 Del.C. Sec. 2306 and Superior Court Rule 58(b), Del.C.Ann. giving rise to a long-standing practice in Delaware of entering judgment upon notes with warrant of attorney attached, we think it might bet-

ter have been instituted in the State Courts. However, we find no authority under the doctrine of abstention[4] justifying a referral of this case to the State Courts for decision in view of the circumstances presented by this record. Cf. Askew v. Hargrave, March 8, 1971, 401 U.S. 476, 91 S.Ct. 556, 28 L.Ed.2d 196; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

## JURISDICTION

Although our jurisdiction in this action is not drawn into question by either side, we, nevertheless, have considered the point. There being neither diversity nor the necessary jurisdictional amount under T. 28 U.S.C. Sec. 1331, jurisdiction must, if at all, be found on the Civil Rights Act, and, more particularly, 28 U.S.C. Sec. 1343(3).[5] While there has never been a definitive interpretation as to the scope of this section by the Supreme Court, this question was before that Court in Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). However, the views of the Justices were so diverse that there was no majority opinion on this point. Justice Stone's concurring opinion, in which only two other Justices joined, has been frequently cited as authority for the proposition that Sec. 1343(3) affords jurisdiction in cases involving personal, but not property, rights.[6]

"The conclusion seems inescapable that whenever the right or immunity is one of personal liberty, not dependent for its existence *upon the infringement of property rights*, there is jurisdiction

---

3. Excepted from this order were executions on judgments entered on such confession of judgment clauses in bonds accompanying real estate mortgages.

4. We think Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 is distinguishable because the case before us involves substantially the same claim under the Delaware State Constitution.

5. "The District Courts shall have original jurisdiction of any civil actions authorized by law to be commenced by any per-

son: * * * (3) To redress the deprivation under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

6. Jurisdiction for the vindication of such property rights must be founded on Section 1331.

in the district court." (Emphasis supplied.) See P. 530, 59 S.Ct. at p. 971.

While the language of the statute furnishes no basis for the distinction above drawn, nevertheless, sound judicial thinking has approved it [7] as the only practical method of harmonizing the section with the general federal question jurisdictional statute, 28 U.S.C. Sec. 1331, which has always had a jurisdictional amount. See Eisen v. Eastman, 421 F.2d 560, 563–566 (2d Cir. 1969). In that case, Judge Friendly, speaking for the Second Circuit, after a careful review of the cases, held that Sec. 1343(3) afforded no jurisdiction upon which a landlord could base an action involving property rights only against the city district rent and rehabilitation director challenging the constitutionality of the city rent control law and actions taken under that law.[8] In line with this view, see, e. g., National Land & Investment Co. v. Specter, 428 F.2d 91 (3d Cir. 1970); Bradford Audio Corp. v. Pious, 392 F.2d 67 (2d Cir. 1968) (seizure of bank deposit); Bussie v. Long, 383 F.2d 766, 769 (5th Cir. 1967) (class action against Louisiana Tax Commission alleging nonfeasance of members); Howard v. Higgins, 379 F.2d 227 (10th Cir. 1967) (deprivation of $500.00 while in sheriff's custody); Gray v. Morgan, 371 F.2d 172, 174–175 (7th Cir. 1966) (attack on Wisconsin income tax); Ream v. Handley, 359 F.2d 728 (7th Cir. 1966) (slander of title to real estate by state officials).

And, conversely, a line of cases exists upholding federal court jurisdiction under Section 1343(3) where the right asserted was purely personal. See, e. g., Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (equal right to vote); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (freedom of speech and of petition for redress of grievances); and Crossen v. Fatsi,

309 F.Supp. 114 (D.Conn.1970) (school rules involving dress and grooming invade right of privacy). Some decisions involve license revocations which impair the personal right to pursue an occupation. See, e. g., Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970) (real estate broker's license); Mansell v. Saunders, 372 F.2d 573 (5th Cir. 1967) (garbage franchise); Burt v. City of New York, 156 F.2d 791 (2d Cir. 1945) (architectural permit); Glicker v. Michigan Liquor Control Comm'n, 160 F.2d 96 (6th Cir. 1947) (liquor license); see also Taylor v. New York Transit Authority, 309 F.Supp. 785 (E.D.N.Y. 1970) (dismissal from employment with transit authority). Others involve contractual rights. See, e. g., McGuire v. Sadler, 337 F.2d 902 (5th Cir. 1964) (suit against Land Commissioner of Texas for illegally changing boundaries); Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953) (teacher's suit against city for refusal to pay agreed-upon new salary).

But as pointed out in *Eisen*, in between these extremes lie dozens of factual situations which can be viewed "about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice as emoluments deriving therefrom." 421 F.2d at 565. And among these, the following are somewhat analogous to the case at bar. See, Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970) (jurisdiction was assumed in this suit to prevent eviction without a hearing without reference to the distinction); Escalera v. New York City Housing Authority, 425 F.2d 853, 864 (2d Cir. 1970) (eviction of a poor person without a hearing violates due process); Laprease v. Raymours Furniture Co., Inc., 315 F. Supp. 716 (N.D.N.Y.1970) (New York statute permitting sheriff to seize defaulting conditional purchaser's house-

---

7. But see, for instance, The Proper Scope of the Civil Rights Act, 66 Harv.L.Rev. 1285, 1290–91 (1953).

8. The Eisen decision is the most frequently cited discussion of Justice Stone's distinction and the overlap between 1343(3) and 1331.

hold articles without a court order violates due process); Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970) (Pennsylvania distraint statute applied to poor persons); McClellan v. Shapiro, 315 F. Supp. 484 (D.Conn.1970) (jurisdiction accepted in complaint by welfare recipients alleging that they were denied equal protection of the laws by amendment to state welfare statute); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970); Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa. 1970) (Pennsylvania judgment by confession procedure); Roberge v. Philbrook, 313 F.Supp. 608, 613 (D.Vt.1970) (loss of public assistance amounts, in the case of a poor person, to a restraint on personal freedom).

Indeed, depending on one's view of the facts, it may be argued with some logic that all the complaints before us here, involving as they do, the alleged unconstitutional deprivation of the rights to property, i. e., land, automobile, boats and wages, on their face at least, fail to meet the personal liberty test laid down by Justice Stone elsewhere discussed.[9]

But a more persuasive argument can be built upon the proposition that the plaintiffs here do not seek to recover property as such (land, automobiles, boats, wages, etc.) seized by way of attachment or execution process. They do not deny the existence of a debt. What they complain of essentially is defendants' attempt to collect it by a method violative of their personal rights to notice and hearing.

After careful consideration, and while not free from doubt, it is our conclusion that the peculiar facts of this case come within the purview of Sec. 1343(3) as presently interpreted by the authorities. Accordingly, we conclude there is jurisdiction in this case.

9. It should be noted that Sniadach v. Family Finance, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and Santiago v. McElroy, supra, made fur-

## CONSTITUTIONALITY OF JUDGMENTS OBTAINED BY ENTRY OF JUDGMENT NOTES UPON WARRANT OF ATTORNEY

The practice of entering judgments by confession upon warrant of attorney is a common one in this State. In a typical case, there is attached to the note or other evidence of the debt (frequently an installment sales or loan contract), a fine print clause somewhat as follows:

AND FURTHER, I or we, whether as maker or makers, or endorser or endorsers hereof, do hereby, jointly and severally, authorize and empower any Justice of the Peace in the State of Delaware, or elsewhere, with or without process, to enter judgment, or any Clerk, Prothonotary or Attorney of any Court of Record in the State of Delaware, or elsewhere, with or without process, to appear for me, or us, or any of us, and to confess judgment for the above amount against me, us, or any of us in the Superior Court of the State of Delaware, or elsewhere, in the above obligation, with legal interest, together with five percent (5%) of the amount of the debt and interest as counsel fee, at the suit and favor of the holder of this note, his, her, its or their executors, administrators, successors or assigns, at any time after the date hereof, and as of the last, next or any other term or time, with stay of execution until the date payment is due; and I or we do hereby jointly and severally release all and all manner of error or errors in any such judgment and execution issued or to be issued thereon. AND FURTHER, I or we do hereby waive the benefit of any and all exemption laws of the State of Delaware, or elsewhere, AND the maker or makers and endorser or endorsers each hereby waive presentment, demand and notice of dishonor.

ther inroads on this distinction in recognizing that even deprivations of property can amount to a deprivation of personal rights where they result in a taking of the minimal necessities of life.

In accordance with the provisions of Superior Court Rule 58(b),[10] the holder of such a note or obligation or his attorney may obtain judgment by the simple process of signing the warrant of attorney and presenting it, together with the original and copy of the note, to the Prothonotary.[11] A judgment is then automatically entered against the debtor without notice of any kind and in the absence of any sort of judicial determination as to whether there has been an actual default or whether other defenses exist.

Having obtained judgment, the judgment creditor may attempt to collect by way of levy, execution and sale upon the real or personal property of the debtor or by way of an attachment of the debtor's wages.

In the case of the former, a debtor receives no notice until the actual levy upon his property after which sale cannot be held until the expiration of 30 days after the levy and 10 days notice of sale to the debtor. See T. 10 Del.C. Sections 4951, 4971 and 4972.

In the case of a wage attachment, a writ of attachment fi fa based upon the confessed judgment is served upon the garnishee, employer, and the practice in that respect is laid down in Wooley on Delaware Practice, Chapter XX. Insofar as can be ascertained, neither the Delaware statutes, Rules of Court or practice respecting wage attachments require any kind of notice to the debtor even upon the actual attachment of his wages.

Until July 1, 1970, the Rules of the Superior Court required notice to all confessed judgment debtors upon the entry of judgment against them. Rule 77.[12] But effective July 1, 1970, Rule 77(d) abolished this notice procedure:

"(d) Immediately upon the entry of an order or judgment, *other than judgments by confession* the Prothonotary shall serve a notice * * *." (Our emphasis.)

Thus, the first notice to a debtor who has had a judgment by confession entered against him, and who has lands, goods and chattels which are the subject of a levy, is not at the time of the entry of judgment but when the levy is made. And in the case of the confessed judgment creditor who has no leviable property except wages, no notice at all is required and he presumably, as a practical matter, first learns that his wages have been attached when called before the garnishee, his employer.[13]

---

10. "(b) Judgment may be entered by confession upon warrant of attorney, provided that before entering such judgment there shall be presented to the Prothonotary the original note or bond, together with a completely legible photocopy of the same, and there shall be noted upon or attached to both the original instrument and copy thereof, the following legend, which shall be signed by both the person exercising the warrant of attorney and the Prothonotary or his deputy: Enter Judgment herein in the Superior Court of the State of Delaware, for ———— County, for ———— (plaintiff) v. ———— (defendant) for $———— (real debt) and $———— (penalty or condition if any) with interest thereon at —% from ———— 19—, plus counsel fee of ————, with stay of execution until ———— (if applicable) in Docket —, Page ——.

———————————————
Person exercising warrant of attorney

———————————————
Prothonotary or Deputy"

11. 10 Del.C. § 2306 explicitly requires the Prothonotary to enter judgment by confession on application of the creditor.

12. Actually, Rule 77, even prior to its amendment, provided for notice, *after*, rather than prior to, the entry of judgment.

13. Nor do we read Schwander v. Feeney's, 3 Terry 198, 29 A.2d 369 (Del.Super. 1942) as affecting this statement. This case merely holds that after entry of judgment but before an attachment for wages is issued, there must be some judicial determination as to what portion of the creditor's claim, if any, represents necessities of life, but, it seems to be a fact that the holding of this case has been completely ignored, at least in the Magistrate courts.

The generally accepted recourse [14] available to a confessed judgment debtor, upon learning of the existence of the judgment, is to file a motion to vacate or open the judgment pursuant to Superior Court Rule 60(b).[15] As will hereafter appear, the remedy afforded by this Rule falls far short of curing constitutional shortcomings in the Delaware practice.[16]

To summarize, then, judgments, obtained by confession upon warrant of attorney in Delaware may be, and are in practically every case,[17] entered without notice or hearing, and in the absence of any form of judicial determination as to their correctness, and with no opportunity on the part of the judgment debtor to be heard as to existing defenses. In the absence of an intelligent waiver or some valid governmental or creditors' interest which would warrant postponement of notice and hearing, such procedures clearly violate the most rudimentary due process requirements under the 14th amendment. See, e. g., Boddie v. Connecticut, March 2, 1971, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113; Goldberg v. Kelly, supra; Sniadach v. Family Finance, supra; Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Opp Cotton Mills v. Administrator, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1941); United States v. Illinois Cent. R. Co., 291 U.S. 457, 54 S.Ct. 471, 78 L.Ed. 909 (1934); Coe v. Armour Fertilizer Works, 273 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915); Spoturno v. Woods, 8 W.W.Harr. 378, 192 A. 689 (Del.Sup.Ct.1937).

In the leading case of Mullane v. Central Hanover Tr. Co., supra, the Supreme Court said:

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of * * * property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."

14. Presumably, a judgment debtor whose property has been attached may move to have the attachment lifted but only upon first posting security. See Superior Court Rule 4(b) (3) (B).

15. "(b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant any relief provided by statute, or to set aside a judgment for fraud upon the court, or to deal with judgments by confession as provided by law. Writs of coram nobis, coram vobis, and audita querela are abolished, and the procedure for obtaining relief from judgments shall be by motion as prescribed in these rules or by an independent action." See also, Miles v. Layton, 8 W.W.Harr. 411, 193 A. 567 (Del.Sup.Ct.1937); Md. Credit Finance Corporation v. Gordy, 5 Del. Super. 434, 61 A.2d 405, 406 (1948) which lay down the practice in the Superior Court on this point prior to the advent of Rule 60(b).

16. It is available after, not before, the entry of judgment.

17. It is possible, of course, for the creditor to file a complaint in the Superior Court based upon the judgment note together with an affidavit of demand as to the amount due. Actually, this is sometimes done. But, obviously, it would be naive to assume that the holder of such a note would often follow this more complicated and time-consuming process.

In the *Boddie* case, Justice Harlan, writing for the majority, concluded that, in the absence of some overriding, vital state interest, notice and the right to a hearing must be afforded prior to the deprivation of any significant property interest:

> "That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity or a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. In short, 'within the limits of practicability,' Mullane v. Central Hanover Tr. Co., supra, [339 U.S.] at 318, [70 S.Ct. 652, at 659, 94 L.Ed. 865], a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause."

We have no doubt that a significant property interest is involved in each of the named plaintiffs' cases because the lien resulting from the entry of judgment, while not completely depriving the debtor from the use of his property, would nevertheless seriously restrict his ability to sell it or use it for collateral.[18] Compare *Sniadach, Goldberg* and *Boddie,* supra. Nor, do we think that special circumstances exist in any of these cases necessitating the protection of a valid governmental or creditor's interest. See, e. g., Cafeteria and Restaurant Workers Union, Local 473, A.F.L.–C.I.O. v. Mc-Elroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552,

91 L.Ed. 2030 (1947); Coffin Brothers and Co. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); Ownbey v. Morgan, 256 U.S. 94, 99, 41 S.Ct. 433, 65 L.Ed. 837 (1921).

Because a number of the complaints before us are based upon alleged unconstitutional wage attachments, the *Sniadach* case has special interest. This was a wage attachment case under Wisconsin law where wages may be attached in the hands of the garnishee by way of a summons issued by the Clerk of Court. Pursuant thereto, the creditor has ten days to serve a summons and complaint upon the debtor. The attachment is dissolved automatically if the wage earner thereafter successfully defends in the main suit on the debt. Obviously, such a procedure is substantially less arbitrary than in Delaware where a judgment is actually entered without notice or the right to hearing subject only to the debtor's right to relief under Superior Court Rule 60(b) elsewhere discussed. Briefly stated, *Sniadach* held that due process requires notice and a hearing prior to a deprivation of the use of one's wages by prejudgment garnishment and that the Wisconsin procedure involved no special circumstances protecting a creditor's or state's interest justifying the postponement of notice and hearing until after the debtor is deprived of the use of his property:

> "Where the taking of one's property is so obvious it needs no extended argument to conclude that absent notice and a prior hearing (cf. Coe v. Armour Fertilizer Works, 237 U.S. 413, 423, 35 S.Ct. 625, 59 L.Ed. 1027), this prejudgment garnishment procedure violates the fundamental principles of due process." [19]

---

18. See 10 Del.C. § 2303(b); 10 Del.C. § 2304; 10 Del.C. § 4717 and Brand v. Ogden-Howard Co., 1 W.W.Harr. 88, 111 A. 370 (Del.Super.1920).

19. Justice Harlan in concurring used somewhat broader language:
"Apart from special situations * * *, I think that due process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property or its unrestricted use."

We think the authorities above cited fully sustain the conclusion here reached that 10 Del.C. Sec. 2306 and Superior Court Rule 58(b) are violative of fundamental due process.

## WAIVER

But none of these cases decides the crucial question raised here, namely, the validity of a judgment obtained by confession upon warrant of attorney where the debtor in signing a judgment note purports to waive the right to notice and hearing in advance of the entry of judgment.[20]

The only two cases dealing with this question[21] are Atlas Credit Corporation v. Ezrine, 25 N.Y.2d 219, 303 N.Y.S.2d 382, 250 N.E.2d 474 (1969), two judges dissenting, and Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970), a three-judge case, in which one judge dissented for reasons not stated. In *Atlas*, the Court was essentially concerned with the question whether New York should give full faith and credit to a Pennsylvania Judgment entered by confession accompanied by power of attorney. In deciding that full faith and credit should not be extended to such a judgment, the majority concluded that the practice " * * * was violative of due process and, therefore, unenforceable under the Federal Constitution." Our reading of the opinion, however, suggests that the result reached might have been heavily influenced by the recognized evils inherent in the system[22] here under attack and, because it fails to discuss and decide what we conceive to be the all-

important issue of waiver, we do not regard it as authoritative.

*Swarb,* however, faces up squarely to what we conceive to be the fundamental issue here, which is whether the purported waiver contained in the language of the typical judgment note is binding on the signers when measured against familiar standards.[23] There, recognizing the principle that a constitutional right such as notice may be the subject of waiver, the Pennsylvania federal court had elaborate evidence from a carefully conducted survey, as well as testimony bearing on the practical aspects of this problem in Philadelphia and concluded in effect that persons having an income under $10,000 annually were not capable of understanding the language and, thus, the legal effect of the waiver clause in the typical confession of judgment note. Based upon this, the Court formulated a class of all persons with incomes less than $10,000 annually and concluded that the members thereof, because of their assumed incapacity to understand the language and legal effect of the confession clauses in these notes had not freely and voluntarily waived their basic due process rights to notice and the opportunity of hearing before entry of the judgments against them. No evidence of the type introduced in the *Swarb* case was offered in the case at bar. Nevertheless, although not by way of a class action, we arrive at the same substantive result based upon a different rationale.

The precise basis upon which plaintiffs rely for relief is unclear. First,

20. See language of a typical judgment quoted above.

21. First National Bank of deKalb v. Jack Keisman (4–4284, Sup.Ct.Ill.1970) stands only for the factual determination that defendant waived in that particular case. However, implicit in that finding is the conclusion that notice and hearing are subject to waiver.

22. Cognovit Judgments "are not in accordance with fundamental principles of justice and fair play" and again, "Today there is a near unanimous feeling of dis-

taste for the time-honored method of obtaining jurisdiction." 303 N.Y.S.2d at pp. 388 and 393, 250 N.E.2d at pp. 479 and 482 citing Paulson, Enforcing The Money Judgment of a Sister State, 42 Iowa L.Rev. 202, 210, and Hopson, Cognovit Judgments, 29 U.Chi.L.Rev. 111, 131, respectively.

23. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zarbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

they contend that there can be no voluntary waiver of due process rights under the Delaware scheme because in order to obtain a loan they have no choice but to sign the waiver clause contained in the judgment note. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960). ⌈ We are not persuaded by this argument.⌉ Nor can we accept defendant's argument that the Truth in Lending Act, T. 15, U.S.C. Sec. 1601 et seq., in effect, does away with the need for a hearing on waiver. While the requirements of that Act may be admissible to throw some light on the degree of understanding of the debtor in executing a judgment note, we see nothing in its language suggesting that compliance therewith furnishes sufficient information on which to base a waiver.

Secondly, somewhat in line with the *Atlas Credit Corp.*, decision, supra, plaintiffs seem to contend that, in some manner, the clear lack of due process inherent in the Delaware statute, Rule of Court and practice resulting, as it does, in numerous instances of unfairness and even downright fraud, vitiates the waiver contained in the confession of judgment clauses. They point to the fact that some 17 states have abolished the system and that many others by statute have attempted to remedy the most glaring evils inherent in the system by providing for some limited form of notice and the right to an initial hearing prior to entry of judgment. And they assert that in England, where this practice originated (and from whence Delaware adopted it), the usage has virtually been eliminated by statute.

But it is not for a court to declare void state statutes or practices based merely upon personal disapproval as did, we suspect, the Court in *Atlas,* supra. As the Supreme Court stated in *Sniadach:*

"The question is not whether the Wisconsin law is a wise law or unwise law.

Our concern is not what philosophy Wisconsin should or should not embrace. We do not sit as a super-legislative body. * * * The sole question is whether there has been a taking of property without the procedural due process that is required by the fourteenth amendment."

■ We still face here the settled proposition that an individual can, under certain specified conditions,[24] waive a constitutional right such as notice and hearing, Swarb v. Lennox, supra and, based upon this proposition, defendants maintain that the plaintiffs here, in signing their notes, have waived their rights —or stated otherwise, that the signer of such a document is deemed to have understood it.

■ But this argument overlooks the well-settled presumption against the waiver of a constitutional right. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. Note also the words of Justice Black in Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966):

"The question of a waiver of a federally guaranteed constitutional right is, of course, *a federal question controlled by federal law.* There is a presumption against the waiver of constitutional rights, see, e. g., Glasser v. United States, 315 U.S. 60, 70–71, [62 S.Ct. 457, 464–465, 86 L.Ed. 680], and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]." (Emphasis supplied.)

See also Aetna Life Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1939):

"But as the right of [civil] jury trial is fundamental, Courts indulge every

---

24. We are not here concerned with a case such as National Equipment Rental Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) where notice was in fact received by the defendant and no due process claim was reached or decided.

reasonable presumption against waiver."

And the very facts of this case demonstrate the soundness of such a rule, for a mere glance at the waiver clause contained in a typical judgment note raises serious doubt whether the average debtor could have any meaningful understanding of the legal implications of the effect of his signature thereto. For instance, we see the expressions "successors and assigns", "release of all and all manner of errors in such judgment", "maker or makers and endorser or endorsers", "waive presentment; demand and notice of dishonor", "authorize * * any clerk, prothonotary or attorney * * with or without process to confess judgment for the above amount against me"; and "waive the benefit of any and all exemption laws." Conceding that some of the quoted language has a well-known, dictionary meaning, we, nevertheless, emphasize that most of the expressions are employed as words of art of the legal profession; and, particularly, we think the evidence shows that the all-important words, "authorize any Clerk * * * with or without process [25] to confess judgment", otherwise unexplained, must be quite meaningless to the unsophisticated signer of a judgment note.

We conclude then, that the Delaware statutory scheme here under attack is fatally defective in that, by failing to provide for notice and hearing preceding entry of judgment,[26] there is no method of judicially determining whether or not a particular debtor knowingly and intelligently signed the judgment note thereby waiving his 14th amendment rights.[27] So that, even conceding as we do, that there may be a substantial number of persons * * * bankers, lawyers, sophisticated businessmen * * * who do sign such notes with a full realization of the legal effect of their acts, it remains that the Delaware practice furnishes no judicial means for separating the case of those persons who have knowingly and intelligently waived from those who have not.

In the light of the foregoing, we decline to accept defendants' argument that the mere signature of the debtor on a judgment note, without more, overcomes the strong presumption against the waiver of one's constitutional rights.[28]

## CLASS ACTION

And because the question of waiver, going as it does to the state of mind, intelligence and degree of knowledge of each obligor when executing such a note, it is, in our view, impossible to formulate a class on whose behalf an action can be maintained.

25. Meaning, of course, the right granted by the 14th amendment to the federal constitution to notice of, and the right to, a hearing before a citizen "is deprived of any significant property interest." Boddie v. Connecticut, supra.

26. At which hearing the judgment creditor may interpose and have determined the defense of waiver.

27. This is not to say that a debtor failing to appear and defend after proper notice may not be held to have waived by his default. See Windsor v. McVeigh, 93 U.S. 274, 278, 23 L.Ed. 914 (1876).

28. It is, of course, not for this Court to presume to suggest here a method by which the Delaware legislature or courts, or perhaps both, could cure the vice inherent in the present system of entry of judgment based upon notes containing a warrant of attorney to confess judgment. Numerous states have attempted to meet this problem. See Clearing House Review (Vol. 4, No. 3, July 1970, PPS 144–145. Appendix A.). Nor is it for us to say what amount of evidence it will take to overcome the presumption against waiver. This is a matter for judicial determination in each case. We can only point out that, assuming arguendo that less evidence might be necessary to find a waiver of a civil, rather than criminal, right, nevertheless, even in the civil field, the federal courts have insisted that such evidence be of a kind and degree as to establish clearly and beyond doubt that the waiver was knowingly and intelligently made. Cf. Aetna Life Ins. Co. v. Kennedy, supra.

We have elsewhere observed that a number of signers of judgment notes, such as lawyers, bankers and sophisticated businessmen, may well have signed such notes fully aware that they were waiving their due process rights. Moreover, the record discloses that many responsible creditors (for instance banks) attempt to explain to debtors that in signing such a note they are expressly waiving their right to notice and a hearing before judgment is entered against them. It may result, then, that a substantial number of existing judgments are valid and enforceable because the judgment creditors knowingly and intelligently have waived their right to notice and a hearing in advance of the entry of judgment. But because the Delaware practice provides no judicial procedure for separating the case of those who have waived from those who have not, we cannot conceive how plaintiffs A, B and C, who claim to have signed judgment notes in ignorance of their due process rights can purport to represent hundreds of other debtors many of whom, after full hearing based upon notice, may be found to have waived such rights.

■ In the final analysis, it is up to the plaintiffs to establish and define the Class upon the basis of which an action can be maintained under Rule 23 F.R. Civ.P. This the plaintiffs have completely failed to do. Thus, even though many of the aspects of a class action may be present here, because the question of waiver clouds the validity of every judgment obtained upon a note with warrant of attorney attached in this State, we reach the conclusion that the unusual character of this case fails to meet the requisites of Rule 23 F.R. Civ.P.

This is not to say, of course, that no safeguards exist for persons who have signed judgment notes and are not plaintiffs in this action. The state courts of Delaware, although not bound by the declaratory judgment aspect of this decree, may well take appropriate action to maintain the status quo between judgment creditors and debtors until final disposition of the issues presented here by the Supreme Court of the United States in *Swarb*, supra. There are strong state interests underlying this litigation and the improvement of orderly state court procedures, and this Court is certainly entitled to assume that, after this decision, state courts will move to protect recognized constitutional rights.

■ We proceed now to a determination as to whether the individual plaintiffs and intervenors have established facts sustaining their contention that they signed the judgment notes in question in ignorance of their constitutional rights. The standard by which this inquiry is governed has been previously laid down; namely, that Courts indulge every reasonable presumption against waiver of a constitutional right, whether the origin of such right be civil or criminal ·in nature, and for a waiver to be effective, it must be clearly established that there was a deliberate and understanding relinquishment of the right involved. Johnson v. Zerbst, Aetna Life Ins. Co. v. Kennedy, supra.

Earlier, we examined in some detail the language of a typical judgment note and noted our reservations as to the ability of the average signer to understand its terms and conditions. We think some or a number of the plaintiffs could understand some of the language employed and that many, if not all, realized that if they defaulted in their payments, their property could be seized and sold. But, as previously emphasized, the crucial language is to be found in the words "authorize any Clerk * * * with or without process to confess judgment," the basic and fundamental right to notice and hearing before the entry of judgment. And our examination of the evidence convinces us that in no case did the defendants demonstrate that any one of these plaintiffs or intervenors signed a note with the specific knowledge that at any time thereafter, without notice or the right to be heard, a judgment could be entered against him in an amount stated by the holder to be due subject

to review only if debtor filed a petition for relief in accordance with Rule 60(b) of the Rules of the Superior Court. The injunction is, accordingly, made final as to these parties.

The conclusion here reached is a declaratory judgment prohibiting the levy and execution on, and sale by the defendants herein of, the property of the 15 signers of the judgment notes drawn into question in this proceeding.

Accordingly, we decree:[29]

(1) That 10 Del.C. Sec. 2306 [30] is unconstitutional and void.

(2) That defendant, Spence, Sheriff of New Castle County, be preliminarily and permanently enjoined from selling any of the property (either real or personal) of, or paying over the proceeds of the attachment of the wages of, any of the debtor plaintiffs or intervening debtor plaintiffs herein who have been found not to have waived their due process rights when executing the judgment notes giving rise to the judgments forming a basis for the levies and/or wage attachments in the case at bar.

(3) That the defendant, Spence, return to each of the named plaintiffs herein, whose wages have been attached, and who have been found not to have waived their rights to due process, the amount of such wages so attached.

The foregoing shall constitute the Court's findings of fact and conclusions of law [31] for purposes of Rule 52(a), Federal Rules of Civil Procedure.

Submit order in accordance herewith.

VAN DUSEN, Circuit Judge (concurring in part and dissenting in part):

I concur in the above opinion except for those portions relating to Jurisdiction and Class Actions. Since plaintiffs Barbour, DuBois and Townsend have incomes which qualify them as "poor" under the guidelines published by the Office of Economic Opportunity, I would permit them to maintain this action as a class action on behalf of persons residing in New Castle County, Delaware, and signing documents other than mortgages, containing confession of judgment clauses, whose income qualifies them as "poor" under the guidelines published periodically by the Office of Economic Opportunity. See Santiago v. McElroy, 319 F.Supp. 284, 291 (E.D.Pa. 1970); Sellers v. Contino (E.D.Pa. No. 70–1946, Opinion of 4/22/71). The Revised OEO Income Poverty Guidelines, OEO Instruction 6004–1b (December 1, 1970), for poor families are:

| Family Size | Nonfarm Family | Farm Family |
|---|---|---|
| 1 | $1,900 | $1,600 |
| 2 | 2,500 | 2,000 |
| 3 | 3,100 | 2,500 |
| 4 | 3,800 | 3,200 |
| 5 | 4,400 | 3,700 |
| 6 | 5,000 | 4,200 |
| 7 | 5,600 | 4,700 |

For families with more than 7 members, add $600 for each additional member in a nonfarm family and $500 for each additional member in a farm family.

The evidence supports a finding that the abovementioned parties "will fairly and adequately protect the interests of the class" and that the other requisites of F.R.Civ.P. 23(a) and (b) are satisfied. Also, the record supports the conduct of the suit by such class under F. R.Civ.P. 23(c) (4).

For the reasons stated in *Santiago, supra,* 319 F.Supp. at 291, the court has jurisdiction of this civil rights action

---

29. The effect of this decree does not extend to bond accompanying mortgages because relief in this category has not only been expressly disclaimed, but none of the plaintiffs or intervening plaintiffs herein are in this category.

30. We feel it unnecessary to declare unconstitutional Rule 58(b) of the Rules of the Superior Court of Delaware for the reason that the conclusion here reached as to the unconstitutionality of Section 2306

adequately protects the interests of these plaintiffs.

31. In view of the March 29, 1971, order of the Supreme Court of the United States in Swarb v. Lennox (No. 538, October Term 1970), stating "probable jurisdiction is noted," 401 U.S. 991, 91 S.Ct. 1220, 28 L.Ed.2d 529, this judgment is subject to review after final disposition of the *Swarb* case by the Supreme Court of the United States.

brought on behalf of such a class under 28 U.S.C. § 1343(3). This court would have pendent jurisdiction of the claims of the named and intervening plaintiffs other than plaintiffs Barbour, DuBois and Townsend. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).